*No. 2017-_____*

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

IN RE CRAY INC.,
*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the Eastern District of Texas
No. 2:15-CV-1554

Hon. Rodney Gilstrap, United States District Judge

## PETITION FOR WRIT OF MANDAMUS

David K. Tellekson
Melanie L. Mayer
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
(206) 389-4510

Bryan A. Kohm
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
(415) 875-2300

*Counsel for Petitioner Cray Inc.*

# CERTIFICATE OF INTEREST

Counsel for Petitioner Cray Inc. certifies the following:

1.    The full name of every party or amicus represented by me is:

      Cray Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

      N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      None.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

| Law Firm | Partners and Associates |
|---|---|
| Fenwick & West LLP | Jonathan T. McMichael, Eman Sojoodi, Reilly T. Stoler, Yixin Zhang, Virginia K. DeMarchi |
| Siebman, Burg, Phillips & Smith LLP | Michael C. Smith |
| July 14, 2017 | Respectfully submitted, |

*/s/David K. Tellekson*
David K. Tellekson
*Counsel for Petitioner Cray Inc.*

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF RELIEF SOUGHT ...................................................................1

ISSUES PRESENTED...........................................................................................1

STATEMENT OF JURISDICTION.......................................................................1

INTRODUCTION ..................................................................................................1

FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED ..............4

REASONS FOR GRANTING THE WRIT............................................................9

      I.     A WRIT IS NECESSARY TO ADDRESS AN UNSETTLED
      AND IMPORTANT AREA OF VENUE LAW AND AVOID A
      WASTE OF JUDICIAL RESOURCES AT THE DISTRICT
      COURTS AND THIS COURT. ....................................................................9

      II.    THE DISTRICT COURT ERRED BY HOLDING §1400(B)
      DOES NOT REQUIRE A PHYSICAL PRESENCE WITHIN THE
      DISTRICT. ................................................................................................13

      III.   *CORDIS* DOES NOT SUPPORT THE DISTRICT COURT'S
      DETERMINATION THAT VENUE IS PROPER IN THIS CASE.............17

      IV.   THE COURT SHOULD VACATE THE DISTRICT COURT'S
      ADVISORY GUIDANCE PROPOSING A FOUR-PART TEST FOR
      A "REGULAR AND ESTABLISHED PLACE OF BUSINESS." .............22

      V.    THE COURT SHOULD DIRECT THE DISTRICT COURT TO
      TRANSFER TO THE WESTERN DISTRICT OF WISCONSIN. .............24

CONCLUSION .....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*American Cyanamid Co. v. Nopco Chemical Co.*,
    388 F.2d 818, 820 (4th Cir. 1968) ..........................................................14, 15, 24

*Boy Scouts of Am. v. Dale*,
    530 U.S. 640 (2000)......................................................................................21

*Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*,
    406 U.S. 706, 713 n.13 (1972)......................................................................19

*Brunswick Corp. v. Suzuki Motor Co.*,
    575 F. Supp. 1412 (E.D. Wis. 1983) ...........................................................16

*Clearasite Headwear, Inc. v. Paramount Cap Mfg. Co.*,
    204 F.Supp. 4 (S.D.N.Y. 1962) ...................................................................15

*Gould v. Cornelius Co.*,
    258 F.Supp. 701 (N.D. Okla. 1966)..............................................................15

*Grantham v. Challenge-Cook Bros., Inc.*,
    420 F.2d 1182 (7th Cir. 1969) .....................................................................14

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
    134 S. Ct. 1744 (2014).................................................................................21

*In re BP Lubricants USA Inc.*,
    637 F.3d 1307 (Fed. Cir. 2011) ...................................................................12

*In re Cordis Corp.*,
    769 F.2d 733 (Fed. Cir. 1985) ...............................................................*passim*

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012) .....................................................................9

*In re Link_A_Media Devices Inc.*,
    662 F.3d 1221 (Fed. Cir. 2011) .....................................................................1

*In re Mark Indus.*,
  751 F.2d 1219 (Fed. Cir. 1984) ..........................................................9

*In re MSTG, Inc.*,
  675 F.3d 1337 (Fed. Cir. 2012) ..........................................................9

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014) ..........................................................9

*In re Queen's Univ. at Kingston*,
  820 F.3d 1287 (Fed. Cir. 2016) ..........................................................9

*In re Spalding Sports Worldwide, Inc.*,
  203 F.3d 800 (Fed. Cir. 2000) ............................................................9

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014) ..........................................................9

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ............................................................24

*Instrumentation Specialties Co. v. Waters Assocs., Inc.*,
  No. 76 C 4340, 1977 WL 22810 (N.D. Ill. Oct. 12, 1977)...............16

*Kay v. J.F.D. Mfg. Co.*,
  261 F.2d 95 (5th Cir. 1958) ..............................................................15

*Knapp-Monarch Co. v. Casco Prods. Corp.*,
  342 F.2d 622 (7th Cir. 1965) ............................................................15

*Lex Tex Ltd. v. Aileen, Inc.*,
  326 F.Supp. 485 (S.D. Fla. 1971) ......................................................15

*MAGICorp. v. Kinetic Presentations, Inc.*,
  718 F.Supp. 334 (D.N.J. 1989) .........................................................15

*McKnight, Inc. v. United Indus. Corp.*,
  No. 16-cv-2534, Dkt. No. 40 (W.D. Tenn. Jul. 7, 2017)...................11

*Nat'l Right to Work Legal Def. v. Richey*,
  510 F.2d 1239 (D.C. Cir. 1975).........................................................12

iv

*Olberding v. Ill. Cent. R. Co.*,
  346 U.S. 338 (1953)..........................................................................12

*Railex Corp. v. White Mach. Co.*,
  243 F.Supp. 381 (E.D.N.Y. 1965) ....................................................15

*Schlagenhauf v. Holder*,
  379 U.S. 104 (1964).........................................................................12

*Schnell v. Peter Eckrich & Sons, Inc.*,
  365 U.S. 260 (1961)..............................................................13, 21, 22

*Shelter-Lite, Inc. v. Reeves Bros., Inc.*,
  356 F. Supp. 189 (N.D. Ohio 1973) .................................................16

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017)...........................................................2, 3, 7, 11

*Univ. of Ill. Found. v. Channel Master Corp.*,
  382 F.2d 514 (7th Cir. 1967) .............................................13, 14, 18

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
  917 F.2d 1574 (Fed. Cir. 1990) .................................................7, 10

*W.S. Tyler Co. v. Ludlow-Saylor Wire Co.*,
  236 U.S. 723 (1915)..........................................................................13, 21

## STATUTES

28 U.S.C. § 1400(b) ...........................................................*passim*

28 U.S.C. § 1404(a) .............................................................24

28 U.S.C. § 1406(a) ...........................................................1, 24

28 U.S.C. § 1651 .....................................................................1

## STATEMENT OF RELIEF SOUGHT

Petitioner Cray Inc. seeks an order reversing the denial of Cray's motion to transfer venue and directing the district court to transfer this case to the Western District of Wisconsin.  *See* 28 U.S.C. § 1406(a).

## ISSUES PRESENTED

1.    Did the district court err in holding that a "regular and established place of business" under 28 U.S.C. § 1400(b) need not be a *physical* presence in the district, but rather an ill-defined "presence"?

2.    Did the district court err in determining that the residence of a single work-from-home employee, who is present in the district for personal convenience, constitutes a "regular and established place of business" of his employer?

## STATEMENT OF JURISDICTION

This Court has jurisdiction to grant mandamus relief under the All Writs Act, 28 U.S.C. § 1651.  *See, e.g.*, *In re Link_A_Media Devices Inc.*, 662 F.3d 1221 (Fed. Cir. 2011) (granting petition for writ of mandamus and ordering transfer of venue).

## INTRODUCTION

Cray has no facilities in the Eastern District of Texas, sells no products in that district, and has no customers there.  Cray's only connections to the district are the private residence of a Cray employee and its reimbursement of that employee

when he used personal belongings for business.  Such connections do not

constitute a "regular and established place of business" under the statute or any

controlling case law.  Nevertheless, in an attempt to adapt the venue statute to a

purported "modern era" in which it is "much less burdensome" for a defendant to

face a lawsuit wherever it engages in "economic activity," the district court held

that this private residence was enough for venue to lie.

> Venue in patent cases is governed by 28 U.S.C. § 1400(b), which provides:
>
> Any civil action for patent infringement may be brought in the judicial
> district where the defendant resides, or where the defendant has
> committed acts of infringement and has a regular and established
> place of business.

Under this Court's precedent, venue was for many years decided under the first

part of the statute, *i.e.*, whether a defendant resides in a district.  District courts

rarely needed to decide what constitutes a "regular and established place of

business."  That changed dramatically in the wake of the Supreme Court's decision

in *TC Heartland,* which held that "a domestic corporation 'resides' only in its State

of incorporation for purposes of the patent venue statute."  *TC Heartland LLC v.*

*Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017).  Because patent

litigation defendants are frequently sued outside their state of incorporation, *TC*

*Heartland* created an immediate need in hundreds of cases to determine whether

those defendants maintain a regular and established place of business supporting

venue.

2

The district court's opinion in this case underscores the need for mandamus relief to address this important issue now. In its first substantive venue opinion after *TC Heartland*, the district court purported to give its own guidance on this subject, including a four-part test to guide future cases. In doing so it made at least two errors that affect the outcome in this case and will affect a rapidly growing number of others:

- First, this Court's decision in *In re Cordis Corp.*, 769 F.2d 733 (Fed. Cir. 1985) held that a "regular and established place of business" need not be a formal office or store. Consistent with other Circuits, however, *Cordis* still looked to the defendant's physical connections to the district and evaluated the business activities conducted there. The district court concluded that a physical presence in the district is not required.

- Second, the district court counted out-of-district activities and conflated the personal connections of Cray's employee with those of Cray to hold that Cray has a "regular and established place of business" in a district in which it has no facilities, sales, product, or customers.

This case is set to begin the first of three separate trials in an improper venue, with jury selection set to start on August 31, 2017. The Court should grant mandamus to direct the district court to grant Cray's motion to transfer and clarify this unsettled area of the law for this and future cases.

3

**FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED**

Cray is a worldwide leader in advanced supercomputing, with over 40 years of experience developing computing, big data storage, and analytic solutions for a wide range of needs. Cray is a Washington corporation with its principal place of business in Seattle, Washington. Appx364-65 ¶ 3. It also has manufacturing and distribution facilities in Bloomington, Minnesota; Chippewa Falls, Wisconsin; Austin, Texas; Houston, Texas; Pleasanton, California; and San Jose, California. Appx364-65 ¶ 3; Appx419-20. Cray does not maintain any offices in the Eastern District of Texas. Appx369-70 ¶¶ 3, 5. Nor has it sold, delivered, or stored any product in that district during the relevant time period. Appx365 ¶ 4; Appx374-75 ¶¶ 3-5.

At the time Raytheon filed its complaint in 2015, Cray employed one individual who lived in the district, Douglas Harless. Harless worked from his home in Athens, Texas from 2012-2016.[1] Appx369-70 ¶¶ 3, 5. Harless is a long time resident of Athens: he lived there before he began work for Cray and

---

[1] Cray formerly employed another salesperson with a private residence in the district during 2010 and 2011, more than four years before Raytheon filed suit. Appx455-56 ¶¶ 3-8. This employee also had no roles or responsibilities that involved the accused products. Appx455 ¶¶ 3-4. In a footnote, the district court criticized Cray's document production with respect to this employee. Appx59 n.1. The Court did not base any portion of its ruling on this footnote, however, and Cray provided a detailed explanation that the district court did not address. Appx425; Appx431-32 ¶¶ 3-6.

4

continued to do so after his employment ended. Appx365 ¶ 6; Appx370 ¶ 5. He has maintained a personal telephone number with the (903) area code assigned to Northeastern Texas since 2007. Appx431 ¶ 2. While Cray permitted Harless to work from his home, it played no part in selecting its location. Appx365 ¶ 6.

Harless worked in sales for Cray, with responsibility for customers in the oil and gas industry. Appx369 ¶ 3. He had no customers in the Eastern District of Texas, and there is no evidence that Harless used his home to host customers, or met with them elsewhere in the district. *See* Appx369-70 ¶¶ 3, 5. Harless' customers were located in Houston and on the East Coast. Appx369 ¶ 3. Nor was it even possible for Harless to make sales or offers for sale of supercomputers from his private residence. Instead, any potential customer would provide specifications to a pricing and configuration team in Cray's Minnesota office. Appx374-75 ¶ 3. That team generates the sales proposal sent to the customer. Appx374-75 ¶ 3. Each proposal lists a Cray corporate office address, such as Minnesota or Seattle. Appx375 ¶ 4. Harless also had no ability to design, assemble, or deliver a supercomputer. Cray designs and assembles each system at its facilities in Wisconsin. Appx375 ¶ 4; Appx365-66 ¶ 7. It ships completed systems directly to the purchaser. Appx375 ¶ 4; Appx370-71 ¶ 6.

As an employee, Harless received reimbursement for his cell phone, internet fees, and business travel costs. Appx370 ¶ 4; Appx375 ¶ 5. But Cray did not pay

5

for any portion of his home or contribute to its maintenance costs.  Appx370 ¶ 5.

Nor did it purchase a company car for Harless or make any car payments.

Appx370 ¶ 4.  Harless received administrative support from Cray's corporate

offices outside the district.  Appx370 ¶ 5.

In 2015, Cray sold one accused XC40 system to the Texas Advanced

Computing Center ("TACC"), which it delivered to TACC at its Austin, Texas

address.  Appx365 ¶¶ 4-5; Appx374-75 ¶¶ 3-5; Appx356.  Austin is not in the

Eastern District of Texas.  After delivery, Cray did not operate the system or

control what users have access to it.  Appx365 ¶ 5.  Cray also did not provide any

hardware for users in the Eastern District of Texas to access the system in Austin.

Appx365 ¶ 5.

### *Procedural History*

Raytheon Company sued Cray on September 25, 2015, accusing it of

infringing U.S. Patent Nos. 7,475,274, 8,190,714, 8,335,909, and 9,037,833, which

relate to hardware and software used in high performance computing systems.

Appx208-18.  To support venue, Raytheon alleged that Cray had design and

manufacturing facilities in Texas, had sales and marketing employees in the

district, and had sold and offered to sell its products in the district, including to

TACC.  Appx209-10 ¶¶ 6-7.

On November 25, 2015, Cray sought to dismiss the case for improper venue because § 1400(b) is "the sole and exclusive provision controlling venue in patent infringement actions," and because "'residency' for purposes of § 1400(b) 'mean[s] the state of incorporation only.'" Appx219-41 (citing *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 226, 229 (1957)). Magistrate Judge Payne held an evidentiary hearing, after which he recommended denial of Cray's motion based on this Court's holding in *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990). Appx256; Appx257; Appx258-94; Appx295-307. The district court adopted the recommendation over Cray's objections on September 23, 2016. Appx308-18; Appx319-320.

After the Supreme Court's decision in *TC Heartland*, Cray promptly filed a second venue motion, this time requesting transfer to the Western District of Wisconsin. Appx335-49. The district court denied the motion on June 29, 2017. Appx58-84. First, it concluded that *Cordis* stood for the proposition that a physical presence in the district was not necessary for a corporation to have a "regular and established place of business" there. Appx72-73. Then, after expressly declining to decide which party bore the burden on the motion, it analogized the facts to those in *Cordis*. Appx74-75. Although Cordis employed multiple sales representatives who visited and sold to customers in the district, held themselves out to the public as having an office in the district, and stored product there, the

district court concluded that Harless' home and sales activities outside the district were sufficiently close to those facts to support venue. Appx75.

The district court then articulated a new four-factor test to assess the existence of a "regular and established place of business" in future cases, in light of what it termed "the modern era." Appx76-83. The district court's new test examines: (1) the defendant's physical presence in the district (which the court holds is not necessarily required); (2) the defendant's representations to the public regarding its places of business; (3) the benefits received by the defendant in the district; and (4) the defendant's targeted interactions with the district. Appx79-83. Although this test purports to reflect governing law regarding venue, the district court declined to apply it to Cray in this case. Appx84 n.13. The district court was, however, "satisfied that had it done so, the result would remain the same." Appx84 n.13.

The district court has set this matter for three separate trials—two jury trials and a bench trial—the first of which is set to begin on August 31, 2017. Appx55, Appx467.

# REASONS FOR GRANTING THE WRIT

## I.   A WRIT IS NECESSARY TO ADDRESS AN UNSETTLED AND IMPORTANT AREA OF VENUE LAW AND AVOID A WASTE OF JUDICIAL RESOURCES AT THE DISTRICT COURTS AND THIS COURT.

A writ of mandamus is appropriate "in exceptional circumstances to correct a clear abuse of discretion or usurpation of judicial power by the trial court." *In re Mark Indus.*, 751 F.2d 1219, 1222 (Fed. Cir. 1984) (internal quotation marks omitted). Such circumstances arise where a writ will "further [its] supervisory or instructional goals" regarding "issues [that] are unsettled and important." *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1291 (Fed. Cir. 2016). This Court regularly finds mandamus appropriate where there is substantial uncertainty or confusion in the district courts. *See id.* at 1292; *see also, In re MSTG, Inc.*, 675 F.3d 1337, 1341 (Fed. Cir. 2012) (accepting petition to resolve "substantial uncertainty and confusion in the district courts"); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000) (accepting petition to address "important issue of first impression" that would benefit from "immediate resolution"). It has also often found questions of venue sufficiently important for mandamus review. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1364-65 (Fed. Cir. 2014) (vacating denial of defendant's motion to transfer as an abuse of discretion); *see also In re Toyota Motor Corp.*, 747 F.3d 1338 (Fed. Cir. 2014); *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012).

Venue in patent cases is governed by 28 U.S.C. § 1400(b), which provides:

Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

Since this Court's decision 27 years ago in *VE Holding*, venue in patent cases has been overwhelmingly decided under the first part of this statute, *i.e.*, whether a defendant "resides" in a district. District courts therefore rarely addressed the second part, whether a defendant "has committed acts of infringement and has a regular and established place of business" in the district.

What constitutes a regular and established place of business remains particularly unsettled because of conflicting regional circuit case law and district court decisions prior to 1990. The district court in this case itself noted the frustration of other courts that the "'jumbled' and 'irreconcilable'" case law provided "nothing even remotely approximating a uniform approach […] to the problem of whether the activities of an employee (or employees) operating out of a home office constitute a 'regular and established place of business.'" Appx76 (quoting *Lace v. Lace*, No. 89-cv-0414, 1989 WL 103364, at *2 (N.D. Ill. Aug. 28, 1989) (Appx475-78)). It further noted "numerous cases, each of which seems to employ a different analysis as to whether a regular and established place of business exists in a particular case." Appx76.

If left to stand, the district court's reasoning in this case will soon influence the analysis of venue in hundreds of pending and soon-to-be-filed cases in the Eastern District of Texas and elsewhere.  *See* Appx483-85 (E.D. Tex Sets Out Regular and Established Place of Business Test for Patent Venue, PRACTICAL LAW LEGAL UPDATE (July 5, 2017)); *McKnight, Inc. v. United Indus. Corp.*, No. 16-cv-2534, Dkt. No. 40 at 3 (W.D. Tenn. Jul. 7, 2017) (Appx479-82) (ordering supplemental briefing in light of the district court's order in this case).  Over one-third of patent cases are filed in the Eastern District of Texas.[2]  *See* Appx486-88 (*Lex Machina's Fourth Annual Patent Litigation Year in Review Report Shows 22 Percent Decline in Patent Filings in 2016*, LEX MACHINA (Mar. 2, 2017), https://lexmachina.com/media/press/report-shows-22-percent-decline-in-patent-filings-in-2016/).  In 2016 alone, 1,662 such cases were filed in that district, 1,119 of which were brought before the district judge in this action.  Appx486-87.  Only a fraction of patent litigation defendants in the Eastern District of Texas are incorporated in Texas.  Therefore, in most cases, whether a defendant maintains a

---

[2] These filings have decreased somewhat following *TC Heartland*.  However, in the five weeks after that decision, 61 patent cases were filed in the Eastern District of Texas, representing 14 percent of all new patent infringement complaints.  *See* Appx490-94 (TC Heartland Is Already Remaking The Patent Litigation Map, *available at* https://www.law360.com/articles/940341/tc-heartland-is-already-remaking-the-patent-litigation-map).

regular and established place of business in the district will be the primary issue that determines whether venue is proper.

Without a writ, this Court would likely not decide the issue presented here until February 2019. *See* Appx489 (United States Court of Appeals for the Federal Circuit, Median Disposition Time for Cases Terminated After Hearing or Submission, *available at* http://www.cafc.uscourts.gov/thecourt/statistics). The risk of allowing an incorrect legal test to percolate in the district courts until then is significant. First, there will be significant repetition of this issue prior to the Court's review. *See Nat'l Right to Work Legal Def. v. Richey,* 510 F.2d 1239, 1244 (D.C. Cir. 1975). This threatens the orderly administration of justice, as the Court's deferred ruling will require numerous new trials. *See Olberding v. Ill. Cent. R. Co.*, 346 U.S. 338, 340-42 (1953) (reversing after jury trial due to improper venue). Second, this repetition will lead to a flood of appeals, further congesting this Court's docket. The district courts need guidance now "to avoid piecemeal litigation and to settle [this] new and important problem[]." *See Schlagenhauf v. Holder*, 379 U.S. 104, 111 (1964); *see also In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011).

## II.    THE DISTRICT COURT ERRED BY HOLDING SECTION 1400(B) DOES NOT REQUIRE A PHYSICAL PRESENCE WITHIN THE DISTRICT.

"The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction."  *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961) (citing *Olberding*, 346 U.S. at 340).

The last guidance from the Supreme Court on the issue in this case came in *W.S. Tyler Co. v. Ludlow-Saylor Wire Co.*, 236 U.S. 723 (1915), which held that a satellite office paid for by the company and occupied by an employee, is not a "regular and established place of business."  *W.S. Tyler*, 236 U.S. at 725.  The Circuit Courts have come to similar conclusions when considering employee home offices.  In *Channel-Master*, the Seventh Circuit considered an employee who used his home office as a "base" for promoting products in the district:

> He regularly prepares reports at his home and transmits them to his employer's home office.  He receives and initiates telephone calls at his home, the address and telephone number of which are listed on his employer's business card, and [the employer] reimburses him for car expenses, postage and telephone calls.

*Univ. of Ill. Found. v. Channel Master Corp.*, 382 F.2d 514, 515 (7th Cir. 1967) ("*Channel-Master*").  Despite this activity, the court held the home was not a regular and established place of business.  *Id.* at 516.  The employee conducted no product demonstrations, received no business visitors, maintained no inventory,

had no business phone listed in the local directory, and did not advertise his home's connection to the employer. *Id.* On those facts, the court could not "by any stretch of the imagination" characterize the entire home as a regular and established place of business. *Id.*; *see also Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1185 (7th Cir. 1969) (no regular and established place of business where the employee lived and worked in the district, but "was free to live where he chose so far as [defendant] was concerned").

In *American Cyanamid Co. v. Nopco Chemical Co.*, the Fourth Circuit affirmed that venue did not lie where a defendant's employee happened to live in a district where his corporate employer was sued. 388 F.2d 818, 820 (4th Cir. 1968). The employee was a sales manager who resided in the district, was provided with a company automobile, kept brochures and invoices regarding the defendant's products in his home, and engaged in communications from his home office. *Id.* at 819-20. Although salesmen had visited his home office, none of his superiors had ever done so. *Id.* at 820. Further, his home had no indication "that [defendant's] business is conducted there or that a company representative is inside." *Id.* The local phone book and the employee's business card did not reference the home office. *Id.* Under these facts, the Fourth Circuit held that "[t]he statute clearly requires that venue be laid where '*the defendant* has a regular and established place of business,' not where *the defendant's employee* owns a home in which he carries

14

on some of the work that he does for the defendant." *Id.* (emphasis added). Thus, venue was improper.[3]

This Court last addressed the issue in *In re Cordis Corp.* There, two Cordis employees sold pacemakers in the district, based in home offices. *Cordis*, 769 F.2d at 735. They kept inventory in their homes that they provided to physician and hospital customers. *Id.* They also consulted during operations and provided other support to those in-district customers. *Id.* The Federal Circuit held that the lack of a formal Cordis office in the district did not preclude venue:

> [I]n determining whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there and not as Cordis argues, whether it has a fixed physical presence in the sense of a formal office or store.

*Id.* at 737.

---

[3] Numerous other decisions are consistent. *E.g.*, *Knapp-Monarch Co. v. Casco Prods. Corp.*, 342 F.2d 622, 625-26 (7th Cir. 1965) (no venue where employee rented office with company name on building and in phone directory); *Kay v. J.F.D. Mfg. Co.*, 261 F.2d 95, 97 (5th Cir. 1958); *MAGICorp. v. Kinetic Presentations, Inc.*, 718 F.Supp. 334, 341 (D.N.J. 1989) ("The law is clear that '[a]n office that serves only as for solicitation of orders without more is not a regular and established place of business.'"); *Lex Tex Ltd. v. Aileen, Inc.*, 326 F.Supp. 485, 487 (S.D. Fla. 1971); *Gould v. Cornelius Co.*, 258 F.Supp. 701, 704 (N.D. Okla. 1966); *Railex Corp. v. White Mach. Co.*, 243 F.Supp. 381, 384-86 (E.D.N.Y. 1965); *Clearasite Headwear, Inc. v. Paramount Cap Mfg. Co.*, 204 F.Supp. 4, 5-6 (S.D.N.Y. 1962).

Based on this language, the district court held that a "regular and established place of business" can exist without a physical location in the district. Appx79-80. But the holding of *Cordis* is not so expansive. The quoted portion of the opinion states only that the physical presence need not be a "formal office or store." *Cordis*, 769 F.2d at 737. Cordis had, in effect, replaced traditional places of business with locations in the district that served the same purpose: the address of the secretarial service, the residences of its employees used to store product, and the offices of its customers. On these facts, the Court declined to issue a writ directing that Cordis lacked a "regular and established place of business" in the district. *Id*. The district court's expansive interpretation "in light of changing technology" and "adapt[ing] [it] to apply in the modern era" takes the "place of business" requirement of the statute and replaces it with only an ill-defined requirement of "presence" in the district.[4] Appx78-79. The language of § 1400(b)

---

[4] The other cases relied on by the district court reflect a minority viewpoint. The *Shelter-Lite* court created a test similar to the district court here, but only after noting it was unaware of "any reported decision in which . . . the activities of a salesman operating from his residence have been held sufficient to create a regular and established place of business within the meaning of 28 U.S.C. § 1400(b)." *Shelter-Lite, Inc. v. Reeves Bros., Inc.*, 356 F. Supp. 189, 191-92 (N.D. Ohio 1973). The remaining cases simply adopt this holding. *See Brunswick Corp. v. Suzuki Motor Co.*, 575 F. Supp. 1412, 1424 (E.D. Wis. 1983) (recognizing rigorous application of § 1400(b), but nevertheless following *Shelter-Lite*); *Instrumentation Specialties Co. v. Waters Assocs., Inc.*, No. 76-cv-4340, 1977 WL 22810, at *6 (N.D. Ill. Oct. 12, 1977) (Appx468-74) (same).

and the Supreme Court's directive that it not be liberally construed preclude such an approach.

### III. *CORDIS* DOES NOT SUPPORT THE DISTRICT COURT'S DETERMINATION THAT VENUE IS PROPER IN THIS CASE.

Correctly understood, *Cordis* also does not support the district court's determination that venue is proper as to Cray.  The facts supporting the conclusion in *Cordis* simply are not present here:

| *Cordis* Fact | *Cray* Fact |
|---|---|
| Secretarial service located in the district answered calls as "Cordis Corporation" and provided administrative support. | N/A. |
| Business cards listed phone number of secretarial service office in the district and telephone directory listed Cordis' address within the district. | N/A.  No listing of Cray in telephone directory.  No address within the district appears on the list of corporate addresses on Cray's website.  Only telephone number connected to the district is personal phone number of employee. |
| Sales representatives with authority to sell and deliver the accused product directly to a customer in the district | N/A.  Employee had no ability to sell or offer to sell to customers. |
| Literature, documents, and the product itself were stored by employees in the district. | N/A.  Product literature stored online. |
| Customers located in the district. | N/A. |
| Employees provided support and consultation services to customers in the district | N/A. |

| Cordis provided employees with company-owned cars for work within the district. | N/A. |
| Two employees lived in the district. | One employee owns a personal residence in the district. |
| Employees were salaried. | Employee was salaried. |

The Court's reasoning in *Cordis* shows that these distinctions are material. It distinguished *Channel-Master* on the basis that: (1) the Cordis employees maintained a stock of its products in the district, while the *Channel-Master* employee kept no stock or samples; and (2) the Cordis employees provided support and consultation services in the district, while the *Channel-Master* employee conducted promotional seminars in the district, but not with respect to the accused product. *Cordis*, 769 F.2d at 737. Here, Cray's employee maintained no product stock and provided no services in the district at all. Cray's facts do not match those of *Cordis*, but instead align more closely with those of cases distinguished by the *Cordis* court. *Id.* (distinguishing, *e.g.*, *Channel-Master*).

The facts on which the district court did rely show why its analysis cannot stand. It called out the facts that: (1) a salaried employee, Harless, chose to live in the district; (2) an internal Cray presentation shows his home on a map; (3) Cray reimbursed business expenses; (4) Harless had administrative support located in Minnesota; (5) Harless communicated with customers and solicited sales outside

the district using his name and personal telephone; and (6) Harless directed

customers outside the district to access Cray marketing materials online.  Appx74-

75.

At most, these facts indicate that Harless was present in the district while

working on behalf of Cray, not that Cray had an established place of business

there.  "Doing business" in a district is not the same as having a regular and

established place of business: those are two distinct concepts for purposes of

venue.  The Supreme Court made this clear in *Brunette Machine Works, Ltd. v.*

*Kockum Industries, Inc.*:

> Venue in a federal-question case was at that time proper only where the defendant was an inhabitant, 24 Stat. 552 (1887), as corrected, 25 Stat. 434 (1888). Thus, the new statute gave patent claimants an advantage by authorizing as an additional venue alternative any district where the defendant maintained a regular place of business, and committed acts of infringement. Ironically, changes in the general venue law have left the patent venue statute far behind. **Since 1948, the general venue law has authorized suit against a corporate defendant not only where he maintains a "regular and established place of business," as in § 1400 (b), but also where he is "doing business."** 62 Stat. 935, now § 1391 (c).  And since 1966, the general venue law has authorized suit where "the claim arose," see n. 8, supra.

406 U.S. 706, 713 n.13 (1972) (emphasis added).

Under *Cordis*, the appropriate inquiry is whether "the corporate defendant

does its business *in that district through* a permanent and continuous presence."

19

*See Cordis*, 769 F.2d at 737 (emphasis added). None of the facts relied on by the district court meet this standard. First, Cray posts materials on its website (*e.g.*, Appx495-502 (http://www.cray.com/sites/default/files/Cray-XC-Series-Brochure.pdf)). But online materials are accessible from anywhere in the world with an internet connection. Second, administrative support staff at Cray's office *in Minnesota* is not evidence of business in the district. *Cf.* Appx74.

Third, the internal Cray presentation illustrating Cray's sales territories also fails to show business in the district conducted through Harless' home:



Color Copy of Appx406. The territories are multi-state territories, and Texas is a part of a territory comprising Oklahoma, Louisiana and Arkansas to which Harless is not even assigned. *See* Appx369-70 ¶¶ 3, 5; Appx406. The "Athens" box simply shows the location where Harless lives. Appx406. It does not, as the

district court concludes, identify the town of Athens, Texas as a sales target for Cray supercomputers. Appx74. It is also an *internal* presentation: no record evidence supports the conclusion that Cray adopted Harless' home as its office or represented *to the public* that it was Cray's place of business. The district court's unsupported conclusion otherwise was erroneous. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 n.2 (2014) ("A district court would necessarily abuse its discretion if it based its ruling … on a clearly erroneous assessment of the evidence.").

The district court's analysis also runs contrary to the plain language of § 1400(b). A "place of business" is a place, not a non-physical "presence." *See Schnell*, 365 U.S. at 264; *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 657 (2000). In considering the "regular and established place of business" prong of the predecessor to § 1400(b), the Supreme Court concluded that the evidence failed to show "a regular and established place of business at 30 Church street within the intendment of the statute." *W.S. Tyler*, 236 U.S. at 725. The Court focused not on whether an employee conducted business in the district, which it did, but rather on whether the office was a regular and established place of business of the company.[5] *Id.* at 724-25.

---

[5] The district court sought to distinguish *W.S. Tyler* on the ground that the employee in that case worked for two companies, which shared the office. Appx75. But here, Cray pays for no office, not even a shared one. Appx364-65

Finally, the district court's expansive interpretation cannot be justified because of the "modern era."  Appx76, Appx78-79 ("[M]odern transportation and communication have made it much less burdensome for a party to defend itself in a state where he engages in economic activity.") (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  The words of the statute are unchanged.  If anything, modern communication makes it easier for employees like Harless to live where the corporate employer has no "regular and established place of business."  It does not justify construing any employee home office as a "regular and established place of business," contrary to the Supreme Court's directive that venue not be given a "'liberal' construction."  *Schnell*, 365 U.S. at 264.

## IV.    THE COURT SHOULD VACATE THE DISTRICT COURT'S ADVISORY GUIDANCE PROPOSING A FOUR-PART TEST FOR A "REGULAR AND ESTABLISHED PLACE OF BUSINESS."

The district court expressly declined to apply its new venue test in this case, explaining that its advisory guidance was only "[f]or the benefit of . . . litigants and their counsel."  This Court should reject that test for the primary reason, discussed above, that it concludes no physical presence in the district is necessary to find a regular and established place of business there.  If the Court were to adopt the

---

¶ 3.  Nor did it pay for Harless' home.  Appx370 ¶ 5.  Nor did Cray use the home to distribute or store product, or to hold meetings.  Appx370-71 ¶¶ 5-6.

district court's proposal, however, the four factors support a determination that venue in this case is improper:

- **_Physical Presence_.** Cray had no "presence" in the district aside from Harless' private residence. It has no formal office, inventory, or property there. *Cf.* Appx80; Appx370-71 ¶¶ 5-6.

- **_Defendant's Representations to the Public._** Cray does not represent to the public that it has an office or other place of business in the district, and there is no basis in the record to conclude otherwise. Cray's addresses are listed on its website, and do not include any in the district. The presentation, discussed above, showing Harless' location on a territory map, was an *internal* presentation not circulated to the public.

- **_Benefits Received from the District_**. Cray did not receive a "benefit" from Harless' home. All of Harless' customers were located outside the district; any benefits Cray received from his work were therefore not from business in the district. *Cf. Cordis,* 769 F.2d at 736.

- **_Targeted Interactions with the District_**. Cray has no such interactions, as Harless traveled to customers located exclusively outside the district to solicit sales and support customers.

As other courts have recognized, "[t]he statute clearly requires that venue be laid where 'the defendant has a regular and established place of business,' not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant." *Am. Cyanamid*, 388 F.2d at 820. None of the four factors identified by the district court supports its conclusion that Cray has a regular and established place of business in the Eastern District of Texas.

## V. THE COURT SHOULD DIRECT THE DISTRICT COURT TO TRANSFER TO THE WESTERN DISTRICT OF WISCONSIN.

Where venue is improper, the action must "be in the interest of justice, transfer[red to a district] in which it could have been brought." 28 U.S.C. § 1406(a); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). Here, the Western District of Wisconsin has personal jurisdiction over Cray because Cray maintains facilities there, and venue is proper because the products alleged to infringe are made at those facilities.[6] *See* Appx365-66 ¶ 7; 28 U.S.C. § 1400(b). Given that this case has been pending for two years and discovery has

---

[6] The § 1404(a) convenience factors also favor the Western District of Wisconsin. Several of Cray's witnesses are located in the district, or in nearby Minnesota. *See* Appx322-24. The first-named inventor of two asserted patents, a key non-party witness regarding prior art and Cray's defenses, resides there, and cannot travel long distances. Appx353 ¶¶ 3-4, Appx358; *see also* Appx346-49, Appx426-27. There are also no serious concerns regarding conflict of laws, familiarity with governing law, or court congestion.

completed, the interests of justice also dictate that the Court should transfer rather than dismiss the case outright and require it to be re-litigated from scratch.

## CONCLUSION

For the foregoing reasons, this Court should grant this petition for writ of mandamus, reversing the district court's denial of Cray's motion to transfer venue and directing the district court to transfer this case to the Western District of Wisconsin.

Dated:  July 14, 2017                    Respectfully submitted,


                                         By:*/s/David K. Tellekson*
                                             David K. Tellekson

Bryan A. Kohm                            David K. Tellekson
bkohm@fenwick.com                        dtellekson@fenwick.com
FENWICK & WEST LLP                       Melanie L. Mayer
555 California Street, 12th Floor         mmayer@fenwick.com
San Francisco, CA 94104                  FENWICK & WEST LLP
Telephone: 415-875-2300                  1191 Second Avenue, 10th Floor
Facsimile: 415-281-1350                  Seattle, WA 98101
                                         Telephone: 206-389-4510
                                         Facsimile:  206-389-4511


Counsel for Petitioner CRAY INC.

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2017, I electronically transmitted this

**PETITION FOR WRIT OF MANDAMUS**. I further certify that the following

counsel of record for Respondent are being served with a copy of this as follows:

| | |
|---|---|
| **William E. Davis, III**<br>**Edward Chin**<br>THE DAVIS FIRM P.C.<br>213 N. Fredonia Street, Ste. 230<br>Longview TX 75601<br>*Counsel for Respondent* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>[ ] By Electronic CM/ECF<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>**[X] By Email**<br>    bdavis@bdavisfirm.com<br>    echin@bdavisfirm.com |
| **Thomas J. Filarski**<br>**Daniel S. Stringfield**<br>**Robert F. Kappers**<br>**Matthew M. Zuziak**<br>STEPTOE & JOHNSON LLP<br>115 South LaSalle St., Ste. 3100<br>Chicago, IL 60603<br>*Counsel for Respondent* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>[ ] By Electronic CM/ECF<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>**[X] By Email**<br>    tfilarski@steptoe.com<br>    dstringfield@steptoe.com<br>    rkappers@steptoe.com<br>    mzuziak@steptoe.com |
| **Sanjeet K. Dutta**<br>STEPTOE & JOHNSON LLP<br>1891 Page Mill Road, Ste. 200<br>Palo Alto, CA 94304<br>*Counsel for Respondent* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>[ ] By Electronic CM/ECF<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>**[X] By Email**<br>    sdutta@steptoe.com |
| **Stephanie L. Roberts**<br>STEPTOE & JOHNSON LLP<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036<br>*Counsel for Respondent* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>[ ] By Electronic CM/ECF<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>**[X] By Email**<br>    sroberts@steptoe.com |

| **Robert Greenfeld** | [ ] By United States Mail |
| STEPTOE & JOHNSON LLP | [ ] By Legal Messenger |
| 1114 Avenue of the Americas | [ ] By Electronic CM/ECF |
| New York, NY 10036 | [ ] By Overnight Express Mail |
| | [ ] By Facsimile |
| *Counsel for Respondent* | **[X] By Email** |
| | rgreenfeld@steptoe.com |

I further certify that this Petition for Writ of Mandamus is being served via

FedEx delivery to the courtroom deputy to:

The Honorable Rodney Gilstrap
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, TX 75670


Dated:  July 14, 2017            By:/s/*David K. Tellekson*
                                      David K. Tellekson

                                FENWICK & WEST LLP
                                Counsel for Petitioner CRAY INC.

## CERTIFICATE OF COMPLIANCE WITH RULE 21(d)(1)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1).  The brief contains 5715 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

This brief complies with requirements of Federal Rule of Appellate Procedure 32(c)(2).  This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word Version 2013 in 14-point Times New Roman.

Dated:  July 14, 2017                         Respectfully submitted,


                                              By:*/s/David K. Tellekson*
                                                  David K. Tellekson

Bryan A. Kohm                                 David K. Tellekson
bkohm@fenwick.com                             dtellekson@fenwick.com
FENWICK & WEST LLP                            Melanie L. Mayer
555 California Street, 12th Floor             mmayer@fenwick.com
San Francisco, CA 94104                       FENWICK & WEST LLP
Telephone:415-875-2300                        1191 Second Avenue, 10th Floor
                                              Seattle, WA 98101
                                              Telephone: 206-389-4510

Counsel for Petitioner CRAY INC.