2017-129
_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

In Re Cray Inc.,

*Petitioner.*

_____

On Petition for Writ of Mandamus to the United States District Court for the
Eastern District of Texas, in No. 2:15-cv-01554-JRG,
Judge J. Rodney Gilstrap
_____

**BRIEF OF THE HIGH TECH INVENTORS ALLIANCE AS
*AMICUS CURIAE* IN SUPPORT OF PETITIONER**
_____

JOHN THORNE
  *Counsel of Record*
ARIELA M. MIGDAL
DANIEL S. GUARNERA
KELLOGG, HANSEN, TODD
  FIGEL & FREDERICK, PLLC
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
jthorne@kelloghansen.com

*Counsel for Amicus Curiae*

July 26, 2017

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*IN RE CRAY INC.*

2017-129

## CERTIFICATE OF INTEREST

Counsel for Amicus Curiae the High Tech Inventors Alliance certifies the following:

1.    The full name of the amici represented by me is:

**High Tech Inventors Alliance**

2.    The names of the real parties in interest represented by me are:

**N/A**

3.    All parent corporations and any publicly held companies that own 10% or more of the stock of the parties or amici represented by me are:

> **The High Tech Inventors Alliance ("HTIA") is a non-stock, nonprofit corporation organized and operated exclusively as a business league within the meaning of 501(c)(6) of the United States Internal Revenue Code. Because it is a non-stock, nonprofit corporation, no parent corporations or publicly held companies own 10% or more of its stock.**

> **HTIA's members are as follows: Adobe Systems, Inc.; Amazon.com, Inc.; Cisco Systems, Inc.; Dell Inc.; Google Inc.; Intel Corporation; Oracle Corporation; and salesforce.com, inc.**

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

**None appeared in the district court in this litigation.  John Thorne, Ariela M. Migdal, and Daniel S. Guarnera are expected to appear in this Court on behalf of Amicus the High Tech Inventors Alliance.**

July 26, 2017                                /s/ John Thorne
                                            Signature of counsel

                                            John Thorne
                                            Printed Name of Counsel

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES ................................................................ iv

INTEREST OF *AMICUS CURIAE* .................................................... 1

INTRODUCTION AND SUMMARY ................................................... 2

ARGUMENT ........................................................................................ 4

I.     The Home of a Telecommuting Employee Does Not Constitute the
       Employer's "Regular and Established Place of Business" ........................... 4

       A.     The Plain Meaning of § 1400(b) Requires a Permanent Physical
              Place ........................................................................................ 4

       B.     The Purpose of § 1400(b) Is Best Served by Requiring a
              Permanent Physical Place .......................................................... 6

       C.     Cases Have Consistently Found that Salespeople's Remote Work
              Sites Do Not Constitute Regular and Established Places of
              Businesses .................................................................................. 8

       D.     *In re Cordis* Is Not to the Contrary .................................... 13

II.    The Four-Factor Test Proposed by the District Court Is Incorrect .............. 14

CONCLUSION ................................................................................... 17

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Action Commn'cs Sys., Inc. v. DataPoint Corp.*, 426 F. Supp. 973 (N.D. Tex. 1977) ............................................................... 15

*Am. Cyanamid Co. v. Nopco Chem. Co.*, 388 F.2d 818 (4th Cir. 1968) ............... 11

*Bradford Novelty Co. v. Manheim*, 156 F. Supp. 489 (D.N.Y. 1957) .................... 7

*Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706 (1972) ............................................................................... 6

*Cordis Corp., In re*, 769 F.2d 733 (Fed. Cir. 1985) ................................... 3, 13, 14

*Elevator Supplies Co. v. Wagner Mfg. Co.*, 54 F.2d 937 (S.D.N.Y. 1931) ........................................................................... 10

*Grantham v. Challenge-Cook Bros.*, 420 F.2d 1182 (7th Cir. 1969) ................... 12

*Herbert v. Diagnostic Products Corp.*, No. 85 CIV. 0856, 1986 WL 6781 (S.D.N.Y. June 10, 1986) ................................................. 13

*Lace v. Lace*, No. 89 C 0414, 1989 WL 103364 (N.D. Ill. Aug. 28, 1989) ............................................................................... 16

*Mastantuono v. Jacobsen Mfg. Co.*, 184 F. Supp. 178 (S.D.N.Y. 1960) ................ 9

*Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939) ...................... 6

*Phillips v. Baker*, 121 F.2d 752 (9th Cir. 1941) .............................................. 5, 13

*Railex Corp. v. White Mach. Co.*, 243 F. Supp. 381 (E.D.N.Y. 1965) ................. 12

*Rosenbluth v. Hudson Motor Car Co.*, 265 F. 680 (E.D. Pa. 1920) ..................... 10

*Ruth v. Eagle-Picher Co.*, 225 F.2d 572 (10th Cir. 1955) ...................................... 7

*Scaramucci v. FMC Corp.*, 258 F. Supp. 598 (W.D. Okla. 1966) ........................ 12

*Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260 (1961) .......................... 13, 15

*Shelter-Lite, Inc. v. Reeves Bros., Inc.*, 356 F. Supp. 189 (N.D. Ohio 1973) .................................................................................................. 12

*Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561 (1942) ..................... 7, 15

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017) ........................................................................................ 1, 2, 3, 16

*United States v. Cores*, 356 U.S. 405 (1958) .......................................................... 6

*Univ. of Ill. Found. v. Channel Master, Corp.*, 382 F.2d 514 (7th Cir. 1967) ............................................................................................ 11, 12, 13

*Up-Right, Inc. v. Aluminum Safety Products, Inc.*, 165 F. Supp. 742 (D. Minn. 1958) ...................................................................................... 5

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .......................................................... 6

*VE Holding v. Johnson Gas*, 917 F.2d 1574 (Fed. Cir. 1990) ................................ 2

*W.S. Tyler Co. v. Ludlow-Saylor Wire Co.*, 236 U.S. 723 (1915) .......................... 9

*Weller v. Pennsylvania R. Co.*, 113 F. 502 (D. Colo. 1902) ................................ 10

*Williams v. Taylor*, 529 U.S. 362 (2000) ............................................................... 4

*Winterbottom v. Casey*, 283 F. 518 (E.D. Mich. 1928) ......................................... 5

*Zimmers v. Dodge Bros.*, 21 F.2d 152 (N.D. Ill. 1927) ................................. 5, 9, 10

## Statutes and Rules

28 U.S.C. § 1400(b) ................................................ 2, 3, 4, 6, 7, 11, 12, 13, 14, 15

42 U.S.C. § 7258 ...................................................................................... 6

Fed. R. App. P. 29(c) .............................................................................. 1

## Other Authorities

BLACK'S LAW DICTIONARY, *Regular* (1st ed. 1891) ............................................ 6

Niraj Chokshi, *Out of the Office: More People Are Working Remotely,*
*Survey Finds*, N.Y. Times, Feb. 15, 2017 .................................................. 8

## INTEREST OF *AMICUS CURIAE*[1]

The High Tech Inventors Alliance ("HTIA") is dedicated to advancing a patent system that promotes investment in new technologies and American jobs. We employ nearly 500,000 U.S. employees, including many of the world's most innovative computer scientists and engineers. Collectively, we spent $63 billion last year on research and development, hold over 115,000 U.S. patents, and have a market capitalization over $1.75 trillion.

HTIA supports the petition for mandamus filed by Cray Inc. The district court's decision contradicts the text and purpose of the patent venue statute. It also undermines the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), by importing vague factors that resemble the "doing business" test for residence that the Supreme Court held inapplicable to patent suits. HTIA's members have thousands of employees who work remotely, an accommodation that benefits employees and employers alike. The district court's ruling and advisory four-factor venue test will deter companies

---

[1] Petitioner Cray Inc. and Respondent Raytheon Company have consented to the filing of this brief. *See* Fed. R. App. P. 29(a)(2). This Court granted leave to file by order dated July 21, 2017. Pursuant to Federal Rule of Appellate Procedure 29(c), HTIA certifies that no counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person or entity, other than *amicus* or its counsel, made a monetary contribution to the preparation or submission of this brief.

from enabling employees to work remotely in order to avoid being haled into plaintiff-favored jurisdictions to defend patent infringement allegations. Granting Cray's petition will help resolve this important and recurring issue.[2]

## INTRODUCTION AND SUMMARY

The federal patent venue statute restricts civil actions for patent infringement to "[1] the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In *TC Heartland*, the Supreme Court held that a corporation "resides" only in its state of incorporation. 137 S. Ct. at 1521. Prior precedent holding that a corporation resided in any district in which it was "doing business," *see VE Holding v. Johnson Gas*, 917 F.2d 1574, 1576 (Fed. Cir. 1990), effectively rendered superfluous – for the last 27 years – the second means of establishing venue under § 1400(b): acts of infringement plus a regular and established place of business. Post-*TC Heartland*, however, courts must once more interpret and apply the long-dormant second part of § 1400(b).

Cray's petition presents an opportunity for this Court to clarify the meaning of a "regular and established place of business" in the context of a frequently

---

[2] According to data compiled by RPX Corporation, since the *TC Heartland* decision, patent infringement defendants have filed improper-venue motions in over 300 cases. District courts have yet to rule on about three-quarters of those motions. While 40 percent of all patent cases in 2015 and 2016 were filed in the Eastern District of Texas, many venue motions are also pending in other districts.

recurring fact pattern. Cray employed a single salesperson who worked from his home in the Eastern District of Texas. The district court denied Cray's request to transfer the case from the Eastern District of Texas after *TC Heartland*, concluding that the salesperson's home constituted a "regular and established place of business" of Cray. *See* Mem. Op. at 18.

That ruling is inconsistent with the text and purpose of § 1400(b) and the weight of relevant case law – including this Court's only opinion interpreting the "regular and established place of business" provision, *In re Cordis*, 769 F.2d 733 (Fed Cir. 1985). The district court also took the remarkable step of announcing an advisory opinion setting forth four novel "factors" to determine venue in future cases – even while declining to apply those factors to the case before it. If applied in future cases, the opinion below is a recipe for wasteful venue-related litigation and for the return of nationwide jurisdiction for companies with employees working remotely around the country.

Section 1400(b)'s "regular and established place of business" provision is not satisfied by a salesperson working remotely. The district court's contrary ruling and advisory test for venue cannot be squared with any reasonable reading of the statute. This Court should grant Cray's petition to correct the district court's misunderstanding of the Supreme Court's and this Court's precedents, and to hold

3

that Cray and other companies are not subject to patent venue in far-flung districts because of employees who work from home.

## ARGUMENT

### I. The Home of a Telecommuting Employee Does Not Constitute the Employer's "Regular and Established Place of Business"

#### A. The Plain Meaning of § 1400(b) Requires a Permanent Physical Place

The "regular and established place of business" provision in § 1400(b) contains three textual elements, each of which must be given independent effect according to its ordinary meaning. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("It is … a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute.") (quotation marks omitted). The personal residence of an employee who works from home does not satisfy any of those three elements.

*First*, the defendant must "ha[ve]" a "place of business." This requirement excludes the possibility that a mere presence without some physical "place" in the district is sufficient; for example, merely shipping goods into a district, or offering them for sale online, would not meet the "place of business" requirement. It is also naturally read to exclude a personal home – much less a vehicle, local library, or neighborhood coffee shop.

*Second*, the place of business must be "established." As the Ninth Circuit explained in a case applying § 1400(b), "[i]t is … entirely clear that the word

4

['established'] was selected deliberately, to signify that the particular place of business contemplated was not any place where business might be transacted, however temporarily, but must be a permanent place of business." *Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941) (quoting *Winterbottom v. Casey*, 283 F. 518, 521 (E.D. Mich. 1928)).  An employee's home does not qualify because it is not a place of business "established" by the employer, and venue would be subject to the employee's whims, including relocation or resignation.  *See*, *e.g.*, *Up-Right, Inc. v. Aluminum Safety Products, Inc.*, 165 F. Supp. 742, 746 (D. Minn. 1958) (forum improper because "[i]f [the salesperson] for some reason on his own volition resigned, defendant's place of business in this State would immediately end"); *Zimmers v. Dodge Bros.*, 21 F.2d 152, 157 (N.D. Ill. 1927) ("[I]f the district representative in the case at bar should be removed from this district, the established business of the defendant would not be appreciably or substantially affected.").

Third, the place of business must be "regular."  This requires, "obviously, a place where such business is carried on 'regularly,' and not merely temporarily, or for some special work or particular transaction."  *Phillips*, 121 F.2d at 756 (quoting *Winterbottom*, 283 F. at 521).  In other words, the place of business must be one that is "[a]ccording to rule; as opposed to that which constitutes an exception to the

5

rule." BLACK'S LAW DICTIONARY, *Regular* (1st ed. 1891). A home is primarily a place in which one lives, and only secondarily a place in which one may work.

Had Congress wanted to specify the location of "employees," it knew how to say so. *See*, *e.g.*, 42 U.S.C. § 7258 ("employees and dependents stationed at remote locations"). By using the phrase "regular and established place of business," Congress distinguished between physical business locations and the locations of employees.

## B.   The Purpose of § 1400(b) Is Best Served by Requiring a Permanent Physical Place

Venue statutes are written to "promote the … goals of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 623 (1964); *see United States v. Cores*, 356 U.S. 405, 407 (1958) (venue statutes "safeguard against the unfairness and hardship" that arises when a party is haled into court "in a remote place").[3] Special concerns of convenience and fairness apply in patent cases; and Congress addressed those concerns by "plac[ing] patent infringement cases in a class by themselves, outside the scope of general venue legislation." *Brunette Machine Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 713 (1972) (referring to the

---

[3] Venue should not be conflated with jurisdiction. Venue – "the place where judicial authority may be exercised" – is a subset of places where the court may have jurisdiction. *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939). "This basic difference between the court's power [jurisdiction] and the litigant's convenience [venue] is historic in the federal courts." *Id.*

predecessor of current § 1400(b)); *see also Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 566 (1942) (The patent venue statute "was a restrictive measure, limiting a prior, broader venue.").

In patent cases, the district where a defendant is headquartered is generally the fairest and most convenient location for the litigants, court, and witnesses. In most infringement actions, the plaintiff's own evidence is primarily the patent itself, and the rest of the evidence comes from the defendant where it designs or makes the accused product. "Practicality and convenience are best served when the case is prosecuted where the alleged acts of infringement occurred and the defendant has a regular and established place of business." *Ruth v. Eagle-Picher Co.*, 225 F.2d 572, 577 (10th Cir. 1955); *see also Bradford Novelty Co. v. Manheim*, 156 F. Supp. 489, 491 (D.N.Y. 1957) ("The patent venue statute reflects a legislative policy recognizing the technical and intricate nature of patent litigation.").

By contrast, a district in which a single employee of the defendant happens to work from home will often be remote from the places where relevant witnesses live and where the bulk of the evidence will be found. This disconnect is increasingly common in the modern economy, where many types of work are done remotely: 31 percent of American workers worked from home over 80 percent of

the time in 2016.[4]  An employer's willingness  to accommodate a telecommuting

employee, without more, does not indicate any broader connection to a particular

location and does not mean that it will be convenient to bring witnesses or

evidence there from afar.

      While venue rules should be simple to apply so that plaintiffs can readily

determine where to file suit and both parties can avoid wasteful litigation, these

rules must respect Congress's decision to limit  venue in patent cases.

Administrability  counsels giving the phrase "regular and established place of

business" its ordinary meaning – a physical place, the existence of which can be

easily determined.  If any employee's home might qualify depending on a multi-

factor test, then fact-intensive  venue disputes will be far too common and the

specter of nationwide venue will loom again.

### C.    Cases Have Consistently Found that Salespeople's Remote Work Sites Do Not Constitute Regular and Established Places of Businesses

      The district court suggested that the case law on this issue is "muddled" and

that "[t]echnology has revolutionized  the way businesses operate and the way

consumers interact with … businesses." Mem. Op. at 21, 22.  But since the patent

venue statute was enacted in 1897, courts have consistently held that company

---

[4] Niraj Chokshi, *Out of the Office: More People Are Working Remotely, Survey Finds*, N.Y. Times, Feb. 15, 2017, https://www.nytimes.com/2017/02/15/us/remote-workers-work-from-home.html.

agents working remotely did not qualify as a "regular and established place of business."

The Supreme Court first interpreted the "regular and established place of business" venue provision in *W.S. Tyler Co. v. Ludlow-Saylor Wire Co.*, 236 U.S. 723, 724 (1915). In that case, the Missouri-based wire company employed an "Eastern representative" who worked part-time for another company, and his two employers split the cost of his New York office. *Id.* at 724-25. The Supreme Court, emphasizing that the remote salesperson had to forward all contracts to Missouri for approval, held that the facts failed to show that the defendant had a regular and established place of business in its salesperson's New York office. *Id.*

Consistent with *W.S. Tyler*, courts have long held that even if a salesperson's activities were "carrying on business of a certain kind and extent," in order to trigger venue under the "regular and established place of business" test "[t]he corporation must be engaged in carrying on in a continuous manner a substantial part of its ordinary business." *Zimmers*, 21 F.2d at 156; *see also*, *e.g.*, *Mastantuono v. Jacobsen Mfg. Co.*, 184 F. Supp. 178, 180 (S.D.N.Y. 1960) ("Mere 'doing business' in a district is not of itself sufficient to confer venue in patent suits. Something more is required.").

For example, in the early 1900s, railroads employed "drummers" who "tr[ied] to work up business for their employers" but were not empowered to enter

into contracts. *Weller v. Pennsylvania R. Co.*, 113 F. 502, 505 (D. Colo. 1902) (oral decision). Drummers' offices did not create patent venue for railroad companies, however, because "what is meant by a regular and established place of business is one in which some substantial part of the business of the company or corporation shall be carried on" – in the case of a railroad, the contracts to carry freight. *Id.* Early decisions reached the same conclusion with respect to car dealerships located far from the manufacturers. Courts reasoned that a regular and established place of business did not exist "by the mere solicitation of orders through an employee," even if from "an office employing in addition several clerks and agents." *Zimmers*, 21 F.2d at 156; *see also Rosenbluth v. Hudson Motor Car Co.*, 265 F. 680 (E.D. Pa. 1920).

In sum, early courts recognized that "the maintenance of an office by a foreign corporation, however long continued and however well equipped, to be used by its employees in soliciting business and doing things incidental to procuring orders for goods manufactured and sold by such corporation in another jurisdiction, does not constitute the maintenance of a regular and established place of business." *Elevator Supplies Co. v. Wagner Mfg. Co.*, 54 F.2d 937, 938 (S.D.N.Y. 1931). In 1948, when Congress enacted the current version of § 1400(b) and kept the same language, it would have been aware that the language had been

interpreted in this fashion and gave no indication that it intended to change that interpretation.

Courts applied these same long-established principles to employees who worked from home offices. In *American Cyanamid Co. v. Nopco Chemical Co.*, 388 F.2d 818 (4th Cir. 1968), the plaintiff sought to establish venue based on a single employee's residence, where he used a corner of his basement as an office, employed a part-time secretary, and occasionally met with subordinates. The plaintiff argued that it was "sufficient under § 1400(b) that there exists within the district a physical location where an employee of the defendant carries on a part of his work." *Id*. at 820. The Fourth Circuit "refuse[d] to so hold" because "[t]he statute clearly requires that venue be laid where 'the defendant … has a regular and established place of business,' not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant." *Id*.

The Seventh Circuit reached a similar conclusion in *University of Illinois Foundation v. Channel Master Corp.*, 382 F.2d 514 (7th Cir. 1967). In *Channel Master*, the salesperson's office "coincides with his family bedroom at home where he has a typewriter and an adding machine"; he also used his home telephone number and address for business purposes. The court held that it "cannot by any stretch of the imagination characterize [the salesperson's] family

bedroom or even his entire home as 'a regular and established place of business' of Channel Master." *Id*. at 516.

Courts faced with similar fact patterns consistently reached the same conclusion: A salesperson's residence was not a regular and established place of business of his or her employer. *See*, *e.g.*, *Grantham v. Challenge-Cook Bros.*, 420 F.2d 1182 (7th Cir. 1969); *Scaramucci v. FMC Corp.*, 258 F. Supp. 598 (W.D. Okla. 1966); *Railex Corp. v. White Mach. Co.*, 243 F. Supp. 381 (E.D.N.Y. 1965).

It was not until 76 years after the 1897 venue statute was enacted that a district court first held, in *Shelter-Lite, Inc. v. Reeves Bros., Inc.*, 356 F. Supp. 189 (N.D. Ohio 1973), that an employee's home constituted a regular and established place of business of his employer.[5]  The *Shelter-Lite* court candidly noted that "[f]rom the briefs of counsel, and the Court's research on the subject, it does not appear that in any reported decision in which … the activities of a salesman operating from his residence have been held sufficient to create a regular and established place of business." *Id*. at 192.  The court stated that "the size and complexity" of modern business has "compelled" the law to "look with a more liberal eye" upon corporate venue. *Id*. at 194.  However, it made little effort to square its reasoning with the text of § 1400(b), nor the Supreme Court's earlier

---

[5] Each case cited by the district court in this "line" of cases relies heavily on *Shelter-Lite* as an authority.  *See* Mem. Op. at 15.

admonition that "[t]he language of [§ 1400(b)] is clear and specific. … [F]or us to enlarge upon the mandate of the Congress as to venue in such patent actions would be an intrusion into the legislative field." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262-63 (1961).

There is nothing new about salespeople working remotely, including from home. Despite the lack of recent judicial discussion of this provision, there is a long and well-established body of case law for courts to draw from now that *TC Heartland* has clarified the need for appropriate limits on patent venue, and it counsels strongly against the district court's decision in this case.

### D.     *In re Cordis* **Is Not to the Contrary**

The district court erroneously held that its decision was supported by *In re Cordis Corp.*, 769 F.2d 733 (Fed Cir. 1985). Cray has ably distinguished *Cordis*, pointing out the numerous factual distinctions between that case and this one. *See* Pet. Br. at 17-18. It is worth emphasizing that *Cordis* "laid considerable stress on the precise facts of [its] case," *Herbert v. Diagnostic Products Corp.*, No. 85 CIV. 0856, 1986 WL 6781, at *4 (S.D.N.Y. June 10, 1986), and took pains to distinguish both *Phillips* and *Channel Master*, *see supra* pp. 4-5, 11-12. *Cordis* did not suggest that either of those cases was incorrectly decided.

In *Cordis*, the Court carefully avoided announcing a broad new rule changing the statute's requirement of a "regular and established place of business"

to some looser "presence." If this Court does not overrule *Cordis*, it should limit the case to its facts – including the presence of inventory for sale and the provision of services by the salespeople directly in the district. But it is not necessary for this Court to overrule *Cordis* to decide this case correctly in Cray's favor.

## II.    The Four-Factor Test Proposed by the District Court Is Incorrect

The Court should reject the four-factor test created by the district court. The district court stated that there was "little in the way of case law developing a definition" of a regular and established place of business under § 1400(b). Mem. Op. at 14. In fact, as explained *supra*, the case law beginning shortly after the statute's predecessor was enacted in 1897 developed widely used standards for a regular and established place of business. The district court's four factors, or "guideposts," are also a clear departure from the statute itself, and they threaten to undo *TC Heartland*, which eliminated nationwide venue for patent cases and reestablished the strict limits enacted by Congress.

In its first factor, the court stated that an abstract "presence" – determined by an assessment of "equipment," "infrastructure," "inventory," or "employees" – suffices to establish venue, and a physical place is neither "dispositive" nor "prerequisite." This analysis ignores the fact that the statute requires a "place" – not a "presence" – and that venue itself is a physical, geographical consideration: where should the trial take place? Congress decided to limit venue in patent trials

to "those places where th[e] mass of technical data is located. One obvious place is ... the site of Defendant's regular and established place of business where acts of infringement have occurred." *Action Commn'cs Sys., Inc. v. DataPoint Corp.*, 426 F. Supp. 973, 975 (N.D. Tex. 1977).

The district court's analysis wrongly assumes that the notion of physical place is obsolete in the Internet age. Venue under § 1400(b) "is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell*, 365 U.S. at 264. Expanding venue in light of technological changes "would be an intrusion into the legislative field." *Id*. at 262-63; *see also Stonite Products*, 315 U.S. at 566 (patent venue statute is a "restrictive measure" that is "intended to define the exact limits of venue in patent infringement suits"). The prevalence of telecommuting is, if anything, a reason to be cautious not to deter the efficiency and convenience of such arrangements by taxing them with expanded patent venue.

The second and third suggested factors, defendant's representations about the district and benefits received in the district, are vague and can be easily misapplied. As to defendant's representations, Cray's internal directory map listing its salesperson's home address did not create a regular and established place of business. There is no evidence that Cray ever represented to anyone outside the company that its salesperson's home was a place of business. Cray did not rent,

purchase, or set up a location in the district. It merely allowed one employee to work from home, and told other employees how to contact him there.

Similarly, as to benefits in the district, in an e-commerce-driven economy, a company's "sales revenue" in a district has little bearing on whether it has a regular and established place of business there. Mem. Op. at 24-25. Here, Cray's salesperson neither concluded any sales from his home in the district (those were finalized out of Cray's established offices), nor did he sell to customers in the district. Any "benefits" that Cray received were not received in the district. *See Lace v. Lace*, No. 89 C 0414, 1989 WL 103364, at *3 (N.D. Ill. Aug. 28, 1989) (no venue where a salesperson, working from home, solicited a "substantial amount of business" – $2.5 million per year).

Finally, a factor of "targeted interactions" with the district departs from the statute's specification of a single type of interaction: "establish[ing]" a "regular" "place of business." The district court's grab bag of factors such as defendants' "contractual relationships," "customer support," and efforts to build "brand strength and business goodwill" were analogized from "personal jurisdiction analysis" (Mem. Op. at 25-26 & n.11) and, if applied in future cases, would undermine *TC Heartland*'s decision that such factors do not define proper patent venue.

16

The district court's factors are unworkable and do no more than create, prospectively, additional reasons to keep cases in districts where they should not be heard, contrary to the venue statute. This Court's intervention is urgently needed to reaffirm that the statutory language itself provides the limiting guidelines for fairness and convenience of litigants.

## CONCLUSION

The Court should grant the writ of mandamus.

Dated: July 26, 2017                    Respectfully submitted,

                                        /s/ John Thorne
                                        John Thorne
                                        Ariela M. Migdal
                                        Daniel S. Guarnera
                                        KELLOGG, HANSEN, TODD,
                                           FIGEL & FREDERICK, P.L.L.C.
                                        1615 M Street, N.W., Suite 400
                                        Washington, D.C. 20036
                                        (202) 326-7900 (Telephone)
                                        (202) 326-7999 (Facsimile)
                                        jthorne@kellogghansen.com

                                        *Counsel for Amicus Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


 /s/ John Thorne
John Thorne

# CERTIFICATION OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) and Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 3,891 words, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 29(a)(4) and 32(b), and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word Version 2013 in 14-point Times New Roman.

Dated: July 26, 2017              Respectfully submitted,

                            /s/ John Thorne
                         John Thorne
                         Ariela M. Migdal
                         Daniel S. Guarnera
                         KELLOGG, HANSEN, TODD,
                           FIGEL & FREDERICK, P.L.L.C.
                         1615 M Street, N.W., Suite 400
                         Washington, D.C. 20036
                         (202) 326-7900 (Telephone)
                         (202) 326-7999 (Facsimile)
                         jthorne@kellogghansen.com
                         *Counsel for Amicus Curiae*