No. 2017-129

# United States Court of Appeals for the Federal Circuit

**IN RE CRAY INC.,**

*Petitioner.*

On Petition for Writ of Mandamus to the
United States District Court for the Eastern District of Texas
No. 2:15-CV-1554, Judge Rodney Gilstrap

## BRIEF OF *AMICUS CURIAE* GILEAD SCIENCES, INC. IN SUPPORT OF PETITIONER

Adam K. Mortara
Katherine G. Minarik *(ECF Credentials Pending)*
Faye E. Paul
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Tel: (312) 494-4400

*Counsel for Amicus Curiae*

July 21, 2017

# CERTIFICATE OF INTEREST

Counsel for the *Amicus* certifies the following:

1. The full name of every party or amicus represented by me is:

    Gilead Sciences, Inc.

2. The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me is:

    None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    The following law firms and attorneys represent *amicus curiae* in its pending litigation in the District of Minnesota: Bartlit Beck Herman Palenchar & Scott LLP (Adam K. Mortara, J. Scott McBride, Glen E. Summers, Alison G. Wheeler, Katherine G. Minarik, Nevin M. Gewertz, Rebecca T. Horwitz, Nosson D. Knobloch, and Faye E. Paul) and Berens & Miller, PA (Barbara P. Berens, Erin Forgery Lisle, and Carrie L. Zochert).

    Adam K. Mortara, Katherine G. Minarik, and Faye E. Paul of Bartlit Beck Herman Palenchar & Scott LLP appear in this court for *amicus curiae*.

July 21, 2017                     /s/ *Adam K. Mortara*
                                  Adam K. Mortara
                                  *Counsel for Amicus Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................................. i

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................... iii

INTEREST OF *AMICUS CURIAE* ........................................................................... 1

INTRODUCTION ...................................................................................................... 2

ARGUMENT .............................................................................................................. 3

    A.    Contrary to the district court's view, *Cordis* does not conclusively hold that § 1400(b)'s requirement of a "place" can be met without a regular and established physical business location .................................. 4

    B.    The proper interpretation of "regular and established place of business" under current Supreme Court precedent requires an actual "place" ......................................................................................... 6

CONCLUSION ........................................................................................................ 11

PROOF OF SERVICE

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

# TABLE OF AUTHORITIES

**Cases**

*In re Cordis*,
   769 F.2d 733 (Fed. Cir. 1985) .................................................................... 4, 5

*In re Sea Ray Boats, Inc.*,
   No. 2017-124, 2017 WL 2577399 (Fed. Cir. June 9, 2017) .......................... 3

*In re Spalding Sports Worldwide, Inc.*,
   203 F.3d 800 (Fed. Cir. 2000) ......................................................................... 3

*Johnston v. IVAC Corp.*,
   681 F. Supp. 959 (D. Mass. 1987) ................................................................... 5

*Minn. Mining & Mfg. Co. v. Int'l Plastic Corp.*,
   159 F.2d 554 (7th Cir. 1947) ......................................................................... 10

*Raytheon Co. v. Cray, Inc.*,
   -- F. Supp. 3d --, No. 2:15-CV-01554-JRG, 2017 WL 2813896
   (E.D. Tex. June 29, 2017) ........................................................................... 5, 7

*Ross v. Blake*,
   136 S. Ct. 1850 (2016) ..................................................................................... 7

*Ruddies v. Auburn Spark Plug Co.*,
   261 F. Supp. 648 (S.D.N.Y. 1966) ................................................................... 9

*Sandifer v. U.S. Steel Corp.*,
   134 S. Ct. 870 (2014) ....................................................................................... 6

*Schnell v. Peter Eckrich & Sons, Inc.*,
   365 U.S. 260 (1961) ......................................................................................... 8

*Shelton v. Schwartz*,
   131 F.2d 805 (7th Cir. 1942) ......................................................................... 10

*Stonite Products Co. v. Melvin Lloyd Co.*,
   315 U.S. 561 (1942) ......................................................................................... 8

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   137 S. Ct. 1514 (2017) .................................................................................. 8, 9

**Statutes**

28 U.S.C. § 1391(c) .................................................................................................. 7, 8

28 U.S.C. § 1400(b) ........................................................................................ 4, 8, 9, 10

28 U.S.C. § 1694 ....................................................................................................... 9, 10

**Rules**

Fed. R. App. P. 29 .......................................................................................................... 1

**Other Authorities**

Justice Elena Kagan, *In Memoriam: Antonin Scalia*, 130 Harv. L. Rev. 5 (2016) ............... 7

WEBSTER'S SECOND NEW INTERNATIONAL DICTIONARY
    (2nd ed. 1934) ............................................................................................................ 6

# INTEREST OF AMICUS CURIAE

Gilead Sciences, Inc. is the defendant in patent litigation in the District of Minnesota, where Gilead does not have a "regular and established place of business" and is not a resident. Gilead has moved to transfer that case for improper venue, and this Court's disposition of the instant petition could affect the outcome of that motion. *See* Gilead's Motion to Transfer, *Regents of the Univ. of Minn. v. Gilead Scis., Inc.*, No. 0:16-cv-02915-SRN-HB (D. Minn., June 23, 2017), ECF No. 142.[1]

---

[1] Petitioner Cray Inc. and Respondent Raytheon Company consent to the filing of this brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus* certifies that no counsel for a party authored this brief in whole or in part, and no counsel made a monetary contribution intended to fund the preparation or submission of this brief. No person or entity, other than *amicus* and its counsel, made a monetary contribution to the preparation or submission of this brief.

# INTRODUCTION

*TC Heartland LLC v. Kraft Foods Group Brands LLC* upended more than 25 years of venue case law, and rejected an interpretation of the patent venue statute that permitted nationwide venue against any accused infringer of modest business size. Since then, patent litigants' attention has turned to the second prong of the patent venue statute, which requires a defendant to have a "regular and established place of business" in the district for venue to be proper. This area of the law has been largely unaddressed for decades.

Whether a "regular and established place of business" requires a "place"—an actual, physical business—in the district is a question of first impression for this Court and critical to dozens or more patent cases pending in district courts around the country. This Court should address this uncertainty now because reading "place" out of the statute is an unsustainable interpretation of the statute. At a minimum, it should correct the misapprehension that this Court's decision in *Cordis* decided the issue already.

The district court in *Raytheon v. Cray* over-read *Cordis* as holding that an actual "place" is not required. The district court then proceeded to create a four-part test for a "regular and established place of business," that allows people to be "places." Already, other district courts have begun repeating the same error, over-reading *Cordis* and skipping required steps of statutory interpretation, based on *Raytheon*'s misapprehension of the law. Gilead submits this *amicus* brief because its opponent, the

2

Regents of the University of Minnesota, is not only asking the District of Minnesota to make the same misstep the district court here made in reading "place" out of "regular and established place of business," but has asked that court to adopt the flawed *Raytheon* test as well.

Improper venue results in reversible error after the parties have spent extraordinary resources litigating a case to judgment. This Court, in its discretion, should use this petition for mandamus to clarify the law, interpret "place" in accordance with Supreme Court precedents, and provide the lower courts with the guidance that a place of business is not a person but a real and physical location where business is conducted. Otherwise untold costs will be spent by parties litigating for months or years waiting for the inevitable appellate review. *Cf. In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000) (accepting petition to address "important issue of first impression" that would benefit from "immediate resolution"); *In re Sea Ray Boats, Inc.*, No. 2017-124, 2017 WL 2577399, at *1 (Fed. Cir. June 9, 2017) (Newman, J., dissenting) ("Determination of the forum is appropriate before expenditure of the major resources of a two-week jury trial.").

## ARGUMENT

A "regular and established place of business" requires a "place." The district court over-read *Cordis* as holding to the contrary. That error infects the entirety of its analysis and requires not just reversal but clarification about what *Cordis* does and does not stand for—*i.e.* this Court should spell out that *Cordis* did not purport to and

3

did not provide a final authoritative interpretation of "regular and established place of business" in the patent venue statute.

### A. Contrary to the district court's view, *Cordis* does not conclusively hold that § 1400(b)'s requirement of a "place" can be met without a regular and established physical business location

The patent venue statute, 28 U.S.C. § 1400(b), permits venue "where the defendant has committed acts of infringement and has a regular and established place of business." *Cordis* did not eliminate § 1400(b)'s requirement of an actual "place"—a physical location, regular and established, where the defendant conducts its business. The district court interpreted *Cordis* without regard to its procedural posture and its narrow holding. The only question for the *Cordis* panel was whether "a rational and substantial legal argument can be made in support of the rule in question," "even though on normal appeal, a court might find reversible error." *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).

The district court in *Cordis* had held that "place of business" did not require a physical presence under the facts presented. *Id.* at 735. On petition for mandamus, the panel noted that the Supreme Court had cautioned that "the provisions of § 1400(b) are not to be liberally construed," but that "it has yet to address the issue of whether it is necessary to show that a corporate defendant maintains a fixed physical location within a jurisdiction." *Id.* at 736. The panel then assessed the two cases on which the petitioner relied, noted how they could be read contrary to the petitioner's argument, and concluded that "[a]s the record indicates that a rational and substantial legal

4

argument may be made in support of the court's order denying Cordis' motion to dismiss for lack of proper venue [*i.e.*, the case law could be read to not always require a physical presence], we decline to issue the writ." *Id.* at 736-37. That was it.

*Cordis* did not, contrary to the district court's suggestion, conclusively resolve the meaning of "place" or even survey the state of the law on that issue. *Cordis* did not examine the text and purpose of the patent venue statutory language. *See Johnston v. IVAC Corp.*, 681 F. Supp. 959, 964 (D. Mass. 1987) ("While it appears the [*Cordis*] court may have done away with the requirement that a defendant establish a fixed physical presence in the district, the court's decision supports only the holding that a 'rational and substantial legal argument' can be made to uphold the district court's finding based on the local sales representatives' activities out of their homes.").

The district court here even truncated its quote from *Cordis*, turning the panel's recitation of what other courts had said into a faux holding. *Compare Raytheon Co. v. Cray, Inc.*, -- F. Supp. 3d --, No. 2:15-CV-01554-JRG, 2017 WL 2813896, at *9 (E.D. Tex. June 29, 2017) (setting out the "*Cordis* test" as a holding beginning with the words "the appropriate inquiry"), *with Cordis*, 769 F.2d at 737 (opening the quoted sentence with "These cases indicate that …"). All *Cordis* did was note that authorities the petitioner itself relied on arguably supported the plaintiff on the issue of whether a physical location was needed. *Id.* The panel did not say whether or not that "indicat[ion]" was correct. *Id.*

5

*Cordis* only holds that a *rational* argument was made, in 1985, that the patent venue statute's use of the word "place" did not require a physical location. It resolves nothing else. Whether "place" requires a "place" remains an open question in this Court.[2]

**B.     The proper interpretation of "regular and established place of business" under current Supreme Court precedent requires an actual "place"**

"Place" is a word that has been in the patent venue statute since the 19th century and should not be interpreted to include "people" or "no place." "It is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014) (internal quotation marks omitted). "Contemporary common meaning" means contemporaneous with the era of the statute's enactment, not "contemporary" as in today. *Id.* at 876–77. And there is no doubt that the relevant definition of "place" is a physical location. *Place*, WEBSTER'S SECOND NEW INTERNATIONAL DICTIONARY (2nd ed. 1934) (providing over a dozen definitions of "place" with only one possibly applicable to this statute: "A building, part of a building, or other spot, set apart for a special purpose; as, a *place* of

---

[2] To the extent this Court were to conclude otherwise and decide that it is bound by what the district court says is a holding of *Cordis*—as if it were an opinion on the ultimate merits—initial hearing *en banc* of this petition is advisable so that the *en banc* Court can properly interpret the statute in accordance with controlling Supreme Court precedents.

6

worship, of amusement."). Should Congress wish to amend the venue statute to incorporate virtual places, telecommuting circumstances, or whatever other non-physical contrivance it might wish to be sufficient for venue, it can. Until it does, the statute cannot be amended by judicial interpretation. *But see Raytheon*, 2017 WL 2813896, at *11 (purporting to "interpret[] the law in light of changing technology").

With the greatest respect to those judges that read "place" out of the statute thirty years ago, that was an exercise from a bygone era of statutory interpretation that does not withstand modern judicial scrutiny. "Statutory interpretation, as we always say, begins with the text." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (Kagan, J.); *see also* Justice Elena Kagan, *In Memoriam: Antonin Scalia*, 130 Harv. L. Rev. 5, 9 (2016) ("Does anyone now decline to focus first, in reading a statute, on its text in context?"). In this case, the district court skipped this analysis entirely following its over-reading of *Cordis*. And after *TC Heartland*, in which the Supreme Court, to no surprise, began its interpretation of language in the patent venue statute with the text itself, such a stark deviation from the ordinary meaning of "place" deserves close scrutiny.

*TC Heartland* confirms that the proper analytical mode must look at the statute as originally enacted and with reference to the interpretation it would have been given at that time. In *TC Heartland* the Supreme Court examined the history of the patent venue statute. At issue was whether the term "resides" is defined by the general venue statute, 28 U.S.C. § 1391(c), which states that a corporate defendant's "residence" includes any place it "is subject to the court's personal jurisdiction," or is instead

7

limited to a corporate defendant's place of incorporation. To reach its conclusion, the Court reviewed the history of §§ 1391 and 1400(b) to "provide[] important context for the issue" in the case. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1518 (2017). The Court examined the Act of 1897 (the predecessor to the modern patent venue statute) and the Court's prior decision in *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561 (1942). *Id.* The 1897 Act was passed to "resolve[] the confusion" surrounding venue for patent cases and to "place[] patent infringement cases in a class by themselves, outside the scope of general venue legislation." *Id.*; *see also Stonite*, 315 U.S. at 565. Its legislative history illustrates Congress's effort not just to clarify but also to narrow venue for patent cases:

> 'As the bill was referred to me, I wrote to a great many patent lawyers in different parts of the country, in order to get their views and objections, if any, and I find that they are all unanimously in favor of the bill as it is now reported, and state that it would tend not only to define the jurisdiction of the circuit courts not now defined, *but also limit that jurisdiction* and so clearly define it that in the future there will be no question with regard to the application of the acts of 1887 and 1888.'

*Stonite*, 315 U.S. at 565 n.5 (quoting H. Rpt. No. 2905, 54th Cong., 2d Sess.) (emphasis added); *see also Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262 (1961) (1897 Act meant "to eliminate the 'abuses engendered' by previous venue provisions allowing such suits to be brought in any district in which the defendant could be served"). Finding no evidence that Congress intended to change this century-old interpretation, the Supreme Court declined to overrule its prior opinion (*Fourco*) and reached the

8

same conclusion yet again in *TC Heartland*—"resides" means place of incorporation. 137 S. Ct. at 1521.

This is how the Supreme Court interprets statutes, in particular the patent venue statute at issue here, with a methodical march through the text and purpose. Yet in over-reading *Cordis*, the district court bypassed this required analysis for "regular and established place of business"—an analysis this Court has never undertaken.

Nor does the three-page decision in *Cordis* do any of this work in the course of its abbreviated "rationality" review. *Cordis*, presumably because the parties and panel were not focused on what the Supreme Court says matters today, does not address or consult the contemporaneous common meaning of "place" or "place of business." *Cordis* also does not analyze the patent venue service statute, 28 U.S.C. § 1694, which also contains the same phrase, "regular and established place of business." 28 U.S.C. § 1694 (where an accused infringer is not a resident but has a "regular and established place of business[,]" service may be made "upon his [defendant's] agent or agents conducting such business"). Cases interpreting § 1694 confirm that "place of business" requires a physical location. *See Ruddies v. Auburn Spark Plug Co.*, 261 F. Supp. 648, 654 (S.D.N.Y. 1966) (interpreting § 1694 in light of § 1400(b) and stating "[i]t must appear that a defendant is regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis *in a physical location within the district over which it exercises some measure of control*" (internal citations omitted) (emphasis added));

9

*Shelton v. Schwartz*, 131 F.2d 805, 808 (7th Cir. 1942) (finding service proper under the predecessor to § 1694 because agent was found at a physical office in Chicago where the defendant paid rent and had its name on the door); *Minn. Mining & Mfg. Co. v. Int'l Plastic Corp.*, 159 F.2d 554, 561 (7th Cir. 1947) (refusing to find service on an independent distributor was proper under the predecessor to § 1694 where defendant did not have its own physical office in the district). None of the courts broadening § 1400(b)'s use of "place of business" into the metaphysical realm, including the district court here, have ever addressed the patent venue service statute and its identical language.

Many patent plaintiffs now find themselves unable to identify any actual place of business for the companies they sued prior to *TC Heartland*. Those plaintiffs, including many in the Eastern District of Texas where defendants' connections to the district have often been loose, are now proposing interpretations of "regular and established place of business" untied to "place" entirely (and often untied to "regular" or "established" or "business" as well). But people are not places. This Court should not allow the district court's erroneous four-factor test to fester and metastasize throughout the district courts while awaiting clarification that may not come for some time.[3]

---

[3] Gilead recognizes that this petition arises in the same posture as *Cordis* and, therefore, could be disposed of with the simple observation that a "rational" argument exists for denying the physicality requirement of "regular and established

## CONCLUSION

For the reasons set forth above, the Court should grant the petition for mandamus and hold that "a regular and established place of business" requires a physical location where the defendant regularly conducts its business.

July 21, 2017                                                  Respectfully Submitted,

/s/ *Adam K. Mortara*
Adam K. Mortara
Katherine G. Minarik *(ECF Credentials Pending)*
Faye E. Paul
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
adam.mortara@bartlit-beck.com
katherine.minarik@bartlit-beck.com
faye.paul@bartlit-beck.com

*Counsel for Amicus Curiae*

---

place of business." Such a narrow ruling is inadvisable in that it will not aid litigants and lower courts, but it would also be incorrect. Whatever the rationality of that argument before, in light of recent precedents regarding statutory interpretation and of the arguments the *Cordis* panel did not get the chance to consider, it is no longer rational now.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on  July 21, 2017 by:

- ☐ U.S. Mail
- ☐ Fax
- ☐ Hand
- ☒ Electronic Means (by E-mail or CM/ECF)

| | |
|---|---|
| Adam K. Mortara | /s/ Adam K. Mortara |
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Bartlit Beck Herman Palenchar & Scott LLP |
| Address | 54 W. Hubbard Street, Suite 300 |
| City, State, Zip | Chicago, IL 60654 |
| Telephone Number | 312-494-4400 |
| Fax Number | 312-404-4440 |
| E-Mail Address | adam.mortara@bartlit-beck.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7), Federal Rule of Appellate Procedure 21(d)(1) and Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 2,710 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word version 2013 in 14-point Garamond.

July 21, 2017               Respectfully Submitted,

/s/ *Adam K. Mortara*
Adam K. Mortara
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, Illinois 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
adam.mortara@bartlit-beck.com

*Counsel for Amicus Curiae*