**2017-129**

# In the
# United States Court of Appeals
# for the Federal Circuit

_____

*In re Cray, Inc.*,

*Petitioner.*

_____

On Petition for Writ of Mandamus to the
United States District Court for the Eastern District of Texas
No. 2:15-CV-1554, Judge Rodney Gilstrap

_____

## BRIEF OF AMICI CURIAE ERICSSON INC., NOKIA USA INC., AND NOKIA TECHNOLOGIES OY IN SUPPORT OF RESPONDENT

_____

Steven J. Pollinger
Joel L. Thollander
Dustin M. Howell
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, Texas 78701
(512) 692-8700

Mike McKool, Jr.
   *Principal Attorney*
Theodore Stevenson, III
Nicholas M. Mathews
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4900

*Attorneys for Amici Curiae
Ericsson Inc., Nokia USA Inc., and Nokia
Technologies Oy*

August 8, 2017

## CERTIFICATE OF INTEREST

Counsel for Amici Curiae Ericsson Inc., Nokia USA Inc., and Nokia Technologies Oy certify the following:

1.      The full name of every party or amicus represented by me is:

Ericsson Inc., Nokia USA Inc., and Nokia Technologies Oy

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Ericsson Inc. is wholly-owned by Ericsson Holding II Inc., which in turn is wholly-owned by Telefonaktiebolaget LM Ericsson. Telefonaktiebolaget LM Ericsson is publicly held and trades in the United States through American Depository Receipts under the name LM Ericsson Telephone Company.

Nokia USA Inc. and Nokia Technologies Oy are wholly-owned by Nokia Corporation, a publicly held corporation. No other publicly held corporation owns 10% or more of the stock of Nokia USA Inc. or Nokia Technologies Oy.

4.      The names of all law firms and the partners or associates that are expected to appear in this court for the amicus curiae represented by me are:

**MCKOOL SMITH, P.C.:** Mike McKool, Jr.; Theodore Stevenson, III; Steven J. Pollinger; Joel L. Thollander; Dustin M. Howell; Nicholas M. Mathews.


Date: August 8, 2017                    /s/ Joel L. Thollander_____
                                        Joel L. Thollander

i

# TABLE OF CONTENTS

Certificate of Interest ........................................................................................i

Table of Authorities ....................................................................................... iii

Corporate Disclosure Statement ....................................................................v

Statement Regarding Authorship and Funding..........................................v

Interest of Amici Curiae..................................................................................1

Introduction and Argument Summary ........................................................1

Argument..........................................................................................................3

     I.    Good Policy Underlies This Court's Decision In *Cordis*. ..................................................................................3

     II.   The District Court's Proposed Four-Factor Test Is Sound.......................................................................................9

Conclusion ......................................................................................................13

Certificate of Service ....................................................................................14

Certificate of Compliance ...........................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arctic Corner, Inc. v. United States*,
  845 F.2d 999 (Fed. Cir. 1988) ............................................................9

*Fourco Glass Co. v. Transmirra Co.*,
  353 U.S. 222 (1957)..........................................................................8

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S. Ct. 1923 (2016).......................................................................5

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010)....................................................................2, 7, 8

*In re Cordis Corp.*,
  769 F.2d 733 (Fed. Cir. 1985) ....................................................2, 3, 8, 11

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ...........................................................9

*Instrumentation Specialties Co. v. Waters Assocs., Inc.*,
  No. 76 C 4340, 1977 WL 22810 (N.D. Ill. Oct. 12, 1977)...................................5

*JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*,
  No. 3:16-CV-3153-JPM-BDH, 2017 WL 3263215 (M.D. Tenn.
  July 19, 2017)...............................................................................10

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)..........................................................................5

*McKnight v. United Indus. Corp.*,
  No. 2:16-CV-02534-JPM-TMP (W.D. Tenn. July 7, 2017) (Order,
  Dkt. 40) .....................................................................................10

*Minn. Mining & Mfg. Co. v. Johnson & Johnson Prods., Inc.*,
  No. Civ. 4-86-359, 1987 WL 10997 (D. Minn. Jan. 2, 1987)..............................5

*Moore v. Office of Pers. Mgmt.*,
  113 F.3d 216 (Fed. Cir. 1997) ............................................................4

*Nike, Inc. v. Skechers U.S.A, Inc.*,
   No. 3:16-CV-007 (D. Or. June 30, 2017) (Order, Dkt. 120) ............................10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ........................................................................................5

*OptoLum, Inc. v. Cree, Inc.*,
   No. CV-16-03828-PHX-DLR, 2017 WL 3130642 (D. Ariz. July
   24, 2017) ............................................................................................................10

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   137 S. Ct. 1514 (2017) ........................................................................................8

*W.S. Tyler Co. v. Ludlow-Saylor Wire Co.*,
   236 U.S. 713 (1915) .......................................................................................5, 6

*Wi-Lan, Inc. v. Lenovo, Inc.*,
   No. 3:17-CV-365-BEN-MDD, 2017 WL 3194692 (S.D. Cal. July
   27, 2017) ............................................................................................................10

**STATUTES**

35 U.S.C. ....................................................................................................................5

**OTHER AUTHORITIES**

Federal Rule of Appellate Procedure 29(a) ..............................................................1

## CORPORATE DISCLOSURE STATEMENT

Ericsson Inc. is wholly-owned by Ericsson Holding II Inc., which in turn is wholly-owned by Telefonaktiebolaget LM Ericsson. Telefonaktiebolaget LM Ericsson is publicly held and trades in the United States through American Depository Receipts under the name LM Ericsson Telephone Company.

Nokia USA Inc. and Nokia Technologies Oy are wholly-owned by Nokia Corporation, a publicly held corporation. No other publicly held corporation owns 10% or more of the stock of Nokia USA Inc. or Nokia Technologies Oy.

## STATEMENT REGARDING AUTHORSHIP AND FUNDING

No party, party's counsel, or any other person (aside from the amici curiae, its members, or its counsel) authored this brief in whole or in part. No party or party's counsel contributed money intended to fund the preparation or submission of this brief.

## INTEREST OF AMICI CURIAE

Ericsson and Nokia are global leaders and innovators in the telecommunications equipment and services industry, have invested tens of billions of dollars in research and development relating to mobile devices and communications, and, as a result of that investment, own substantial portfolios of patents covering their technology. Importantly, both are licensors and licensees of telecommunications patents. Ericsson and Nokia litigate patent infringement suits throughout the United States—both as plaintiffs and defendants—and thus have an interest in balanced, straightforward, and manageable rules for proper venue in patent cases. Ericsson and Nokia believe the district court's resolution of the issue below, along with its suggested approach going forward, will save Ericsson and Nokia, and numerous other companies like them, significant resources by providing a fair, flexible, and yet focused, venue analysis.

Pursuant to Federal Rule of Appellate Procedure 29(a), all parties have consented to the filing of this brief as amici curiae.

## INTRODUCTION AND ARGUMENT SUMMARY

The Court should deny Cray's petition for writ of mandamus. The district court's analyses of 1400(b)'s "regular and established place of business"—both its application of this Court's holding in *Cordis* and its proposed four-factor test for use in the district court's cases going forward—are sound. The district court rightly

1

rejected the inflexible, stilted, and easily manipulated interpretation of "place of business" proposed by Cray and its amici. Cray effectively equates "place of business" with a fixed physical presence in the sense of a formal office or store. Cray's interpretation is inconsistent with both relevant precedent and good policy.

The district court's approach, on the other hand—which looks to physical presence, but also accounts for the defendant's representations, benefits received, and targeted interactions with the district—is more flexible, more fair, less subject to manipulation, and better designed to properly identify a "regular and established place of business" in today's corporate environment. This approach reflects good policy and is consistent with binding precedent from this Court and with relevant case law from the Supreme Court. *See In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) (rejecting a "fixed physical presence" requirement); *Hertz Corp. v. Friend*, 559 U.S. 77, 95 (2010) (accounting for "this era of telecommuting" in its analysis of "principal place of business").

And the good policy underlying the *Cordis* decision is even stronger today. The Court should decline Cray's invitation to impose a strict physical-presence-only gloss on 1400(b), which would contravene *Cordis*, be out of touch with the modern commercial world, and open the door to easy manipulation of venue—just as the district court recognized.

2

Finally, the district court's proposed four-factor test for determining a "regular and established place of business"—advisory for future matters—is consistent with sound policy and the relevant case law. The district court's test is meant to be simple and straightforward to apply. This simplicity is good for both the bench and the bar, and will reduce protracted discovery fights over the preliminary issue of venue. The flexible test also precludes venue manipulation, as it affords district courts the discretion needed to evaluate venue holistically, and on a case-by-case basis. Amici Ericsson and Nokia endorse this approach.

## ARGUMENT

## I.   Good Policy Underlies This Court's Decision In *Cordis*.

In *Cordis*, this Court recognized the need for flexibility in assessing a defendant's presence in the district and rejected the strict test urged by the petitioner, which would have required "a specific permanent physical location."[1] 769 F.2d at 736. The Court concluded that a company's "permanent and continuous presence" in the district—in the form of a permanently placed salesperson—was enough to satisfy 1400(b). *Id.* That decision—upholding district courts' discretion to consider the facts on the ground, rather than corporate formalities, when determining if venue is appropriate—reflected sound policy. And

---

[1] Cray and its amici are wrong to contend that this case presents a question of "first impression." The Court considered this exact issue—whether a remote employee's activities can constitute a "regular and established place of business"—in *Cordis*.

the policy underlying the Court's decision in *Cordis* is even more compelling now, thirty-two years after the decision.

Cray and its amici, however, urge the Court to take a step back, and impose a strict, rigid test for what constitutes a "regular and established place of business." A panel of this Court cannot, and should not, overrule a prior panel decision, particularly in the context of mandamus. *E.g.*, *Moore v. Office of Pers. Mgmt.*, 113 F.3d 216, 218 (Fed. Cir. 1997) ("As a panel, we are powerless to overrule … a decision of another panel of this court."). Cray's suggested approach—permitting venue only where a corporation owns or rents a fixed, physical location—runs afoul of *Cordis* and ignores the realities of the modern workplace. As amicus High Tech Inventors recognize, almost a third of the American workforce now works from home over 80 percent of the time. Dkt. 26 at 7-8.

Though perhaps not every work-from-home arrangement will provide the necessary facts to maintain venue, district courts should have the discretion to consider the facts on a case-by-case basis. To hold otherwise would ignore the realities of the modern corporate business structure and could shield patent infringers from being sued in districts in which they in fact have regular and established places of business. Worse still, the strict test suggested by Cray and its amici would incentivize corporations to deploy their resources in such a way as to manipulate venue—punishing some companies and rewarding others—all for the

sake of elevating form over substance. *E.g.*, *Minn. Mining & Mfg. Co. v. Johnson & Johnson Prods., Inc.*, No. Civ. 4-86-359, 1987 WL 10997, at *3 (D. Minn. Jan. 2, 1987) ("[U]ndue focus on the existence of an office with defendant's name on the door ignores economic realities and invites manipulation of venue."); *Instrumentation Specialties Co. v. Waters Assocs., Inc.*, No. 76 C 4340, 1977 WL 22810, at *6 (N.D. Ill. Oct. 12, 1977) (noting that an emphasis on physical presence "invite[s] gamesmanship to avoid venue").

The inflexible formulation urged by Cray and its amici is also incompatible with recent Supreme Court decisions that have consistently rejected overly restrictive tests in patent cases. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016) ("eschew[ing] [a] rigid formula for awarding enhanced damages under [35 U.S.C.] § 284"); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755 (2014) (rejecting attorney-fee test as "unduly rigid" and "impermissibly encumber[ing] the statutory grant of discretion to district courts"); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415 (2007) ("We begin by rejecting the rigid approach of the Court of Appeals."). The district court, therefore, was correct in refusing to adopt Cray's rigid interpretation of 1400(b).

Cray's authorities do not compel a contrary result. For example, Cray and amicus High Tech Inventors point to the Supreme Court's 1915 decision in *W.S.*

*Tyler Co. v. Ludlow-Saylor Wire Co.*, 236 U.S. 713 (1915), for the sweeping proposition that a salesperson's activity in a district can never be enough to establish venue. *See* Dkt. 2-1 at 13, 21; Dkt. 26 at 90. *Tyler*, however, is not so broad. In *Tyler*, the salesperson's activities merely consisted of soliciting orders from an in-district office space and forwarding those orders to the company's out-of-district home office. 236 U.S. at 724-25. The important question in *Tyler* was not whether the company maintained a formal, in-district office; it was the nature and extent of the business activities being performed in the district. *Id.* The Court's analysis in *Cordis* was no different.

Cray's amici also point the Court to the "plain language" of 1400(b), contending that "place of business" requires a finding of a fixed physical location that is rented or owned. Dkt. 26 at 4-6; Dkt. 29 at 6-10. Their "plain language" argument ignores one key fact, however, and wrongly assumes another. First, an employee's home *is* a "place," and when an employee works out of his or her home, with the consent of the employer, it is to the benefit of the employer. Second, Cray and its amici assume that a home cannot be a place of business—*i.e.*, that any given "place" must be one or the other, a residence or a business. But countless businesses start out of homes—indeed, several of the amici corporations making up the High Tech Inventors Alliance were formed in their founders' garages. The binary test urged by Cray and its amici ignores this reality.

6

Indeed, the Supreme Court observed in *Hertz* that "a corporation's general business activities more often lack a single principal *place* where they take place. That is to say, the corporation may have several plants, many sales locations, and *employees located in many different places*. If so, it will not be as easy to determine which of these different business locales is the 'principal' or most important '*place*.'" 559 U.S. at 95 (emphases added). The Court, therefore, contemplated that the places employees are located are naturally considered places of business, contrary to the arguments of Cray and its amici.

The Supreme Court in *Hertz* also recognized the need for flexibility in interpreting the phrase "principal place of business" found in the diversity jurisdiction statute. 559 U.S. at 80.[2] The Supreme Court's adoption of a holistic approach accounts for modern complexities and runs counter to the contention of Cray's amici that such considerations have no place in interpreting a statute that has been long on the books. *See id.* at 89-97. The Court recognized that this flexibility was compelled in part by companies' increased use of telecommuting. *Id.* at 95-96 ("[I]n this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different

---

[2] Amicus High Tech Inventors complains that the district court should not have analogized venue analysis to personal jurisdiction cases. Dkt. 26 at 16. The district court acknowledged the distinction, however, and then reasonably concluded that in light of the similar statutory language, "certain considerations may be relevant to both a personal jurisdiction analysis and a proper venue analysis." Appx82 n.11.

locations, perhaps communicating over the Internet."); *see also id.* at 96 ("Our approach provides a sensible test that is relatively easier to apply, not a test that will, in all instances, automatically generate a result."). The same considerations bear on the analysis here, as the district court recognized. Appx77-78.

The district court correctly applied *Cordis*. This Court in *Cordis* refused to find a clear abuse of discretion when the district court applied a holistic review of the facts underlying the venue challenge and determined that a corporation could have a "regular and established place of business" within a district, even if the company did not rent or own an in-district storefront.[3] 769 F.2d at 737. Consistent with that decision, the district court here considered the totality of circumstances and concluded that Cray's permanent and continuous presence in the district was enough to satisfy 1400(b)'s second clause. Because "the facts and circumstances are rationally capable of providing reasons for what the district court has done,"

---

[3] The Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), did not affect *Cordis*. The Court in *Cordis* treated the decision in *Fourco Glass Co. v. Transmirra Co.*, 353 U.S. 222 (1957), as controlling precedent. *Cordis*, 469 F.2d at 735-36. *Cordis*, therefore, is consistent with *TC Heartland*, which affirmed the continued viability of the *Fourco* holding. *TC Heartland* does not, as amicus Gilead Sciences implies (Dkt. 29 at 8-9), compel rejection of *Cordis* or the district court's four-factor test.

mandamus is not appropriate in this case.[4] *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (quotation marks omitted).

This Court rejected the formalism urged by Cray and its amici over three decades ago, and it should do so again here.

## II.     The District Court's Proposed Four-Factor Test Is Sound.

As an initial matter, the district court's proposed four-factor test for what constitutes a "regular and established place of business" under section 1400(b) was advisory—the court made clear in its opinion that it did not rely on the test to decide Cray's motion. Appx84 n.13. Mandamus, therefore, is unnecessary and inappropriate as a vehicle for vacating the district court's proposal, as Cray and its amici urge. *See Arctic Corner, Inc. v. United States*, 845 F.2d 999, 1001 n.2 (Fed. Cir. 1988) ("Advisory opinions are not, of course, appealable to this court."). But to the extent the Court wishes to use this case as a vehicle to provide guidance for future district courts, it should endorse the district court's test.

In the weeks since the *TC Heartland* decision, district courts have resumed their analysis of 1400(b)'s second clause. The District of Arizona, for example, recently denied a request for discovery into whether a defendant maintained a "regular and established place of business" in the district, concluding that "the

---

[4] Gilead argues that this standard should cut against application of *Cordis*'s reasoning here, Dkt. 29 at 4-6, though Gilead ultimately concedes that "this petition arises in the same posture as *Cordis*" and thus is subject to the same "rational argument" standard, *id.* at 10 n.3.

*totality of the circumstances* and the litigation of th[e] case to date" did not indicate that such discovery would be appropriate. *OptoLum, Inc. v. Cree, Inc.*, No. CV-16-03828-PHX-DLR, 2017 WL 3130642, at *6 (D. Ariz. July 24, 2017) (emphasis added). Judges in the Southern District of California and the District of Oregon, on the other hand, have ordered discovery related to factors relevant to 1400(b)'s second clause, including several of the factors proposed by the district court here.[5] These examples show two things: (1) while not identical to the district court's four-factor test, the analyses were similar, thus demonstrating the reasonableness of the test;[6] and (2) the factors were tailored to the particular facts of the case, further underscoring the idea that this Court should afford the district courts the opportunity to adopt a flexible approach in applying the second clause of 1400(b).

---

[5] *See Wi-Lan, Inc. v. Lenovo, Inc.*, No. 3:17-CV-365-BEN-MDD, 2017 WL 3194692, at *3 (S.D. Cal. July 27, 2017) (citing the district court's opinion below and ordering discovery into (1) personnel working in the district; (2) customers within the district; (3) property owned by the defendant in the district; (4) sales activity in the district; and (5) inventory located in the district); *Nike, Inc. v. Skechers U.S.A, Inc.*, No. 3:16-CV-007 (D. Or. June 30, 2017) (Order, Dkt. 120) (ordering discovery concerning: (1) sales in the district; (2) names and activities of third-party vendors; (3) names and activities of agents who have lived or worked in the district; (4) professional services retained in the district; and (5) property owned, leased, or managed by the defendant in the district).

[6] *See also, e.g.*, *JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*, No. 3:16-CV-3153-JPM-BDH, 2017 WL 3263215, at *3 (M.D. Tenn. July 19, 2017) (quoting the district court's four-factor test and ordering additional discovery and supplemental briefing on the matter); *McKnight v. United Indus. Corp.*, No. 2:16-CV-02534-JPM-TMP (W.D. Tenn. July 7, 2017) (Order, Dkt. 40) (same).

The four factors proposed by the district court—(1) physical presence, (2) defendant's representations, (3) benefits received, and (4) targeted interactions within the district—provide flexible guideposts that courts can utilize when evaluating the numerous factual scenarios in which this venue question may arise. And each is grounded in the case law that developed prior to *VE Holding*. For example, almost every court to consider the meaning of 1400(b)'s second clause looked to a defendant's physical presence in the district, even if physical presence alone was not dispositive. Appx79-80. And courts dating back over a century have looked to defendants' representations within the district. Appx81; *see also Cordis*, 769 F.2d at 737 (noting, among other things, defendant's publication of in-district phone number). Likewise, the district court pointed to numerous cases relying on the benefits defendants derived from their in-district presence and the interactions defendants targeted within the district as supporting venue. Appx81-83.

Further, consideration of these additional factors is sensible and fair. There is no reason that a defendant should be permitted to target a district as a place of business; receive substantial benefits from its business within that district; and represent to the world that it has a permanent and continuous presence within that district, but then evade suit in that district simply on the ground that it owns or operates no formal office in the district. The district court's test reasonably allows

11

courts to take facts like these into account when determining whether a defendant has a "regular and established place of business" in the district.

In sum, the district court's four-factor test is good policy, firmly rooted in the case law. It enables courts to conduct the fact-intensive venue inquiry on a case-by-case basis, accounting for the totality of circumstances present, which is necessary in light of the technological advances of the modern workforce. *E.g.*, Appx79 ("[A] consistent theme among courts is that the technological advances that foster growth and advancement in today's business world cannot be ignored. With this theme in mind, the Court turns to the issue before it."). And the test is in line with the case law that developed pre-*VE Holding* and with the handful of cases that have addressed 1400(b)'s second clause post-*TC Heartland*.

For all of these reasons, if the Court is inclined to propose a framework for district courts to utilize in evaluating whether a company maintains a "regular and established place of business" within a district, the Court should adopt the district court's four-factor test. As the Supreme Court did in *Hertz*, the district court's four-factor test will achieve administrative simplicity and will "point[] courts in a single direction." 130 S. Ct. at 96. This result benefits both the bench and the bar.

## CONCLUSION

The Court should deny Cray's petition for writ of mandamus.

Date: August 8, 2017                    Respectfully submitted.

/s/ Mike McKool, Jr.

Mike McKool, Jr.
Theodore Stevenson, III
Nicholas M. Mathews
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas  75201
(214) 978-4900

Steven J. Pollinger
Joel L. Thollander
Dustin M. Howell
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, Texas  78701
(512) 692-8700

*Counsel for Amici Curiae Ericsson Inc., Nokia USA Inc., and Nokia Technologies Oy*

13

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing brief was served by operation of the Court's CM/ECF system per Fed. R. App. P. 25.


Date: August 8, 2017                    /s/ Joel L. Thollander
                                        Joel L. Thollander

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7), Federal Rule of Appellate Procedure 21(d)(1) and Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 2,998 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type style.

Date: August 8, 2017                         /s/ Dustin M. Howell_____
                                             Dustin M. Howell